PENNSYLVANIA STATE TROOPERS
ASSOCIATION and Raymond
Rivera, Petitioners,

v.

PENNSYLVANIA STATE POLICE,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 15, 1995.

Decided Oct. 31, 1995.

James L. McAneny, for petitioners.

Joanna N. Reynolds, Assistant Counsel, for respondent.

Before PELLEGRINI and NEWMAN, JJ., and KELTON, Senior Judge.

PELLEGRINI, Judge.

This case is before us as a result of our Supreme Court's vacating our prior order

filed February 7, 1994, affirming an arbitration decision denying the grievance by the Pennsylvania State Troopers Association (PSTA) and Raymond Rivera (Rivera), protesting Rivera's discharge from employment from the Pennsylvania State Police (State Police). Our previous order was vacated to review the arbitrator's award under the "narrow certiorari" test adopted by the Supreme Court in *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper James Betancourt), (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995), rather than the "essence test" used when we first considered this appeal.

As recounted in our previous opinion, Rivera's dismissal was triggered by an incident on the evening of August 26, 1991. While on duty as a State Trooper, Rivera stopped a car which he allegedly clocked by radar as going 86 m.p.h. in a 55 m.p.h. zone. The driver of the car was Robert W. Kinch, Jr. (Kinch), a Corporal with the Pennsylvania State Police, who had occasionally supervised Rivera in the past. Rivera cited Kinch for speeding and for failing to possess a driver's license.[1] On September 26, 1991, the District Justice found Kinch not guilty of the speeding violation and dismissed all charges against him. On that same date, a Disciplinary Action Report (DAR) was filed against Rivera for filing false citations against Kinch, for which Rivera received a 10–day suspension.[2]

The State Police, through Disciplinary Officer Captain Coury, issued a letter on June 11, 1992, stating that Rivera was discharged from his employment with the Pennsylvania State Police for incompetency based on his improper conduct of citing Kinch, as well as past infractions. The letter specified that:

1. Because Rivera recorded Kinch's date of birth incorrectly, both citations were withdrawn. While the speeding citation was reissued with the correct date of birth, the citation for failing to carry a driver's license was never reissued.

2. Rivera filed a grievance contesting the 10–day suspension. The grievance was resolved by arbitration at which the arbitrator sustained the 10–day suspension.

3. The Pennsylvania State Police Code of Conduct Field Regulation 1–1.02 defines Unbecoming Conduct as:

(1) On or about August 26, 1991, Trooper Rivera issued a citation to Corporal Robert Kinch, in which Rivera indicated that Kinch's vehicle was traveling 86 mph in a 55 mph zone, when Trooper Rivera knew that said speed was false.

(2) On or about August 26, 1991, Trooper Rivera issued a citation to Corporal Robert Kinch for failing to have his operator's license in possession contrary to existing regulations found at OM 7–2 pages 25.1 and 25.2.

(3) The above-referenced conduct was contrary to the provisions of FR 1–2.18, Department Reports. These violations warrant the imposition of a penalty of five days suspension without pay.

(4) The above-referenced citations filed by Trooper Rivera against Corporal Kinch were the result of an act of retaliation against Corporal Kinch for supervisory actions taken against Rivera in the past. *This conduct by Trooper Rivera, which could reasonably be expected to destroy public respect for State Police Officers and confidence in the Department, was contrary to the provisions of FR 1–1.02,*[3] *Unbecoming Conduct. This violation warrants the imposition of a penalty of 15 days suspension without pay and an intertroop transfer.*

(5) Trooper Rivera's conduct, as referenced above, coupled with his prior receipt of repeated disciplinary actions for violation of the rules and regulations of the Department, demonstrated his failure to maintain sufficient competency to properly perform his duties and assume the responsibilities of his position in violation of FR–1–2.05.[4] The prior disciplinary actions included:

> Unbecoming conduct is that type of conduct which could reasonably be expected to destroy public respect for Pennsylvania State Police Officers and/or confidence in the Department. Members shall not conduct themselves in any manner which is unbecoming to a police officer.

4. The Pennsylvania State Police Code of Conduct Field Regulation 1–2.05 defines Competency as follows:

> A. Competency to be Maintained: Members shall maintain sufficient competency to proper-

(1) DAR dated 4/1/91, for violation of FR 1–1.03, 1–1.27, and 1.2.28, [bringing false complaint against Kinch] which resulted in a 10–day suspension without pay.

(2) DAR dated 12/18/90, for violation of FR 1–2.02 and 1–2.12, [disobeying a lawful order from Kinch] which resulted in a one-day suspension without pay.

(3) DAR dated 2/16/90, for violation of FR 1–1.01 and 1–2.28, [causing false information to be entered in an investigative report when he misrepresented facts to Corporal Johnson] which resulted in a five-day suspension without pay.

(4) DAR dated 11/30/89, for violation of FR 1–2.01, [failure to answer radio transmissions when he was requested to assist another officer on the scene of an accident] which resulted in a five-day suspension without pay.

(5) Three separate DAR's dated 5/1/86, for violation of FR 1–1.01, FR 1–2.02, 1–2.04, 1–2.05, 1–2.23, and 1–2.35, [disobeying lawful order issued by Sergeant Scott; lying to Sergeant Scott about his use of on-duty time for personal business; providing information he knew to be false or inaccurate on citations he issued] all of which resulted in a five-day suspension without pay.

Additionally, on September 26, 1991, at the summary hearing which was held before District Justice Raymond Shugars with respect to the speeding charge brought against Corporal Kinch, the District Justice indicated that he did not believe that Corporal Kinch was travelling 86 mph. This finding indicates a lacking or insufficiency with respect to credibility which would hinder Trooper Rivera from properly performing his duties and assuming the responsibilities of his position. *This conduct was also contrary to the provisions of FR 1–1.05, Competency.*

*Due to the nature and seriousness of the violations dealing with competency, and taking into account Trooper Rivera's prior history, a penalty of dismissal is warranted.* Not only did Trooper Rivera complete false Department reports, but he did so in order to retaliate against another member of the Department. His conduct resulted in a specific finding of a lack of credibility on the part of Trooper Rivera by the District Justice. Trooper Rivera has engaged in repeated violations of Department regulations over the past few years, many of which also impacted negatively on his credibility. Due to the nature of police work where a member must interact with the public and testify at various hearings and proceedings, credibility is an essential characteristic which must be possessed by each member. *Trooper Rivera's conduct in this situation clearly demonstrates that his credibility has been compromised. Such conduct can reasonably be expected to destroy the public's respect for Trooper Rivera as a Pennsylvania State Policeman and confidence in the State Police.* (Emphasis added).

The PSTA on Rivera's behalf filed a grievance which proceeded to arbitration.

After considering the testimony and evidence elicited on behalf of both the State Police and Rivera, the arbitrator determined that just cause for Rivera's dismissal existed and denied Rivera's grievance. In his opinion, the arbitrator noted that Rivera's record demonstrated that he had a penchant for lying, disregarding lawful orders and falsifying information. In imposing the penalty, the arbitrator found that Rivera's transgres-

---

ly perform their duties and assume the responsibilities of their positions. They shall direct and coordinate their efforts in such a manner as will tend to establish and maintain the highest standards of efficiency in carrying out the functions and objectives of the Department. The fact that a member was deemed competent at the time of employment shall not preclude a judgment of incompetency as the result of their performance which would indicate a lacking in adequate strength, qualifications or capacity to fulfill the requirements of their assigned tasks.

Such incompetency may be demonstrated by lack of knowledge or application of laws required to be enforced; apparent unwillingness or inability to perform assigned tasks; or the failure to conform to work standards established for the members' rank or position.

B. Record of Incompetency: In addition to other methods of proof, a written record of repeated disciplinary actions for infractions of the rules, regulations or directives will be considered prima facie evidence of incompetency.

sions were not one of competency, but rather of conduct unbecoming an officer, and noted that because Rivera had been provided with progressive discipline for five years and would not respond to further progressive discipline, his dismissal was in order.

The PSTA and Rivera then filed an appeal with this court which affirmed the arbitrator's award but applied the "essence test" to review the arbitrator's decision. The PSTA and Rivera then filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was granted, our order vacated, and we were instructed to review the decision under the narrow certiorari test.

■ Narrow certiorari is a very narrow scope of review. We are limited to consider questions regarding: (1) the jurisdiction of the arbitrators; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) the deprivation of constitutional rights. *Id.*, 656 A.2d at 85; *see also Washington Arbitration Case*, 436 Pa. 168, 174, 259 A.2d 437, 441 (1969). Under the narrow certiorari scope of review, an error of law alone will not warrant the reversal of an arbitration award under Act 111.[5] *Betancourt*, 540 Pa. at —, 656 A.2d at 85.

■ The PSTA and Rivera contend that the arbitrator exceeded his power and violated Rivera's constitutional right to due process because he dismissed Rivera on a charge of unbecoming conduct that in the notice said only warranted a 15–day suspension and intertroop transfer, while the charge contained within the notice's dismissal section was incompetency. There is no doubt that Rivera, as a State Trooper, possessed a property right in his continued employment, which, prior to his dismissal, triggered the procedural due process guarantees of notice of the charges alleged and a hearing on those charges afforded him by the Fourteenth Amendment. *Marino v. Pennsylvania State Police*, 87 Pa.Cmwlth. 40, 486 A.2d 1033 (1985).

■ At the core of the PSTA and Rivera's argument is that Rivera was unaware that he could be dismissed for "unbecoming conduct." To the contrary, Rivera's dismissal letter setting forth the charges against him put him on notice that he was being discharged for both incompetency and unbecoming conduct, even though the specific regulation is not set forth. The dismissal portion of the letter indicates:

> Trooper Rivera's conduct in this situation clearly demonstrates that his credibility has been compromised. Such conduct can reasonably be expected to destroy the public's respect for Trooper Rivera as a Pennsylvania State Policeman and confidence in the State Police.

This language mirrors the language set forth in Field Regulation 1–1.02, the charge of unbecoming conduct (see note 4), fully apprising Rivera that the charge against him could result in his dismissal, and fulfilling the requirements of due process.[6]

■ Not only do we disagree that there was no notice, even if the only notice that Rivera received was that he was subject to a 15–day suspension, that would not justify the reversal of the award. First, contrary to the contentions of the PSTA and Rivera that the arbitrator exceeded his jurisdiction and power because he purportedly imposed a different penalty, increasing the penalty was well within the arbitrator's powers. Reversing our decision in *Pennsylvania State Police v. Fraternal Order of Police*, 159 Pa.Cmwlth. 628, 634 A.2d 270 (1993), *petition for allowance of appeal granted*, 538 Pa. 617, 645 A.2d 1320 (1994), where the issue was whether the arbitrator's modification of penalty constituted an excess exercise of power, the Supreme Court in *Betancourt* held that the arbitrator did not exceed his authority by modifying the penalty imposed by the State Police. *Betancourt*, 540 Pa. at —, 656 A.2d at 90. The arbitration of a grievance under the collective bargaining agreement between the

---

**5.** Act of June 24, 1968, P.L. 237, 43 P.S. §§ 217.1–217.10.

**6.** In civil actions where the facts in a complaint constitute the cause of action, the plaintiff need not specify the statute that the plaintiff contends

defendant violated. The plaintiff need only allege the material facts which form the basis of a cause of action that raise a violation of that provision. *Heinly v. Commonwealth*, 153 Pa. Cmwlth. 599, 621 A.2d 1212 (1993).

FOP and the State Police essentially fulfills the role held by the Board and Commissioner of the State Police in court-martial proceedings. Section 711 of the Administrative Code grants the Board the power to hear the charges and recommend a penalty to the Commissioner, who may disregard, increase or reduce such penalty where he is not otherwise limited by the contract or issue presented. Section 711 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 251(b)(2).

As the Supreme Court held in *Betancourt,* the arbitrator did not exceed his power by the reinstatement of a police officer because reinstatement was an act which could have been voluntarily performed by the State Police Commissioner, was not in contravention of a statute, and was related to the terms and conditions of employment. That holding is just as applicable when the arbitrator increases the penalty suggested as when he or she reduces it. Under the narrow certiorari scope of review, the arbitrator's modification of Rivera's penalty does not constitute an excess exercise of his power.

Second, there is no dispute that Rivera knew that he was charged with unbecoming conduct albeit with a different penalty. (See paragraph 4 of the dismissal letter). Just because Rivera was unaware that the penalty could be different, that alone did not deprive him of his due process rights. In *Copeland v. Philadelphia Police Department,* 840 F.2d 1139, 1144 (3d Cir.1988), *cert. denied,* 490 U.S. 1004, 109 S.Ct. 1636, 104 L.Ed.2d 153 (1989), the Third Circuit considered whether a police officer was entitled to know of the intent to suspend before going forward with a disciplinary hearing. Copeland, a police officer, submitted to a urinalysis test after he was reported as being a drug user. He was informed that the results of his test were positive and a hearing was scheduled. Before his hearing, his Commanding Officer orally informed him that the urinalysis test indicated that he had used marijuana. Copeland was also told of that finding at his hearing. Only at the conclusion of the hearing was Copeland informed that the city intended to suspend him with intent to dismiss. The Third Circuit held that the information

provided to Copeland, given his status as a police officer, his submission to urinalysis, and his knowledge that his test results were positive, satisfied all process he was due. Despite the fact that Copeland was unaware of the penalty to be imposed at the time of the hearing, the Third Circuit held that fact did not violate his due process right to a fair hearing because Copeland was permitted to explain the results of the urinalysis test and presented his version of why such test results were positive.

Rivera was similarly afforded the due process rights guaranteed by the Constitution— the right to notice and the opportunity to be heard. He arrived at his dismissal hearing fully prepared to defend against the charges set forth within the notice and did present testimony on his own behalf. The arbitrator sustained Rivera's dismissal, and, just as in *Copeland,* where the court found no constitutional error by the city's failure to inform the officer of his penalty until the conclusion of his hearing, we find that because the notice says it "warrants" one penalty and the arbitrator increased the penalty, which was within his power, to dismissal, does not violate his due process rights.

Because the arbitrator's award was not in excess of his jurisdiction and Rivera's due process rights were not violated, the decision of the arbitrator denying Rivera's grievance is affirmed.

### ORDER

AND NOW, this 31st day of October, 1995, the award by Arbitrator Carl Stolenberg denying Raymond Rivera's grievance is affirmed.