**CITY OF NEW CASTLE**

v.

**Pius A. UZAMERE, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 28, 2003.

Decided Aug. 1, 2003.

764

Pius A. Uzamere, appellant, pro se.

Theodore A. Saad, New Castle, for appellee.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

Pius Uzamere (Uzamere), representing himself, appeals the order of the Court of Common Pleas of Lawrence County (trial court) denying his motion for post-trial relief and entering judgment in favor of the City of New Castle (City) in the amount of $3,995.00, the cost of abating a public nuisance. We affirm.

As reflected in the deed, Des–Maraf Company (the Company) is the owner of property at 436 Croton Avenue in the City. Uzamere signed the deed as agent of the Company. The deed does not describe the Company as a corporation, nor does it bear the signature of any person identified as a corporate officer.

In 1996, a City Code Enforcement Officer inspected the structure located on the property. Based on his inspection, the officer determined the building constituted a public nuisance because it was hazardous to the health, welfare and safety of the public.

Thereafter, the City, through its contractor, demolished the building. It paid the contractor $3,995.00. To recover the cost, the City filed suit against Uzamere before a District Justice, who entered judgment in favor of the City in the amount of $4,519.66. Uzamere appealed to the trial court.

The City filed a complaint against Uzamere individually, and trading or doing business as the Company. In his answer, Uzamere denied trading or doing business as the Company. He further denied ownership of the property. Uzamere did not aver the owner of the property was a corporation, nor do his pleadings identify the alleged property owner.[1]

A three day jury trial was held. The jury returned a verdict in favor of the City. The trial court denied Uzamere's motion for post-trial relief, and judgment was entered. Uzamere now appeals to this

---

1. Thereafter, the case was referred to compulsory arbitration. After hearing, a board of arbitrators awarded the City $4,400.00 plus interest. Uzamere again appealed.

Court seeking a new trial or, in the alternative, judgment not withstanding the verdict.

When responding to a request for new trial, the trial court must follow a two-step process. *Harman ex rel. Harman v. Borah,* 562 Pa. 455, 756 A.2d 1116 (2000). First, it must decide whether one or more mistakes occurred at trial. *Id.* Second, if the court concludes a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. *Id.* The harmless error doctrine underlies every decision to grant or deny a new trial. *Id.* A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate prejudice resulting from the mistake. *Id.*

As an appellate court, to review the two-step process of the trial court for granting a new trial, we also employ a two prong analysis. *Id.* First, we examine the decision of the trial court that a mistake occurred. In so doing, we must apply the appropriate standard of review. *Id.* If the alleged mistake involved an error of law, we must scrutinize for legal error. If, on the other hand, the alleged mistake at trial involved a discretionary act, we must review for an abuse of discretion. *Id.* If there were no mistakes at trial, we must affirm a decision by the trial court to deny a new trial because the trial court cannot order a new trial where no error of law or abuse of discretion occurred. *Id.*

Alternatively, in reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Moure v. Raeuchle,* 529 Pa.

394, 402, 604 A.2d 1003, 1007 (1992). A judgment n.o.v. should only be entered in a clear case, with any doubt resolved in favor of the verdict winner. *Id.*

There are two bases upon which a judgment n.o.v. can be entered: (1) the movant is entitled to judgment as a matter of law, and/or (2) the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. *Id.* With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor. *Id.* With the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond all doubt. *Id.*

On appeal, Uzamere contends: (1) the trial court erred in dismissing his preliminary objections; (2) the City solicitor lacked authority to file suit on the City's behalf; (3) the trial court erred in denying his request for a continuance; (4) he is not the owner of the property, and thus, cannot be held liable; and (5) the jury charge was unfairly prejudicial.

**1.**

Uzamere first asserts the trial court erred by dismissing his preliminary objections to the City's complaint. In his preliminary objections, Uzamere claimed the City's complaint was not sufficiently specific to enable him to prepare a defense.

The purpose of the pleadings is to place a defendant on notice of the claims upon which he will have to defend. *Yacoub v. Lehigh Valley Med. Assoc., P.C.,* 805 A.2d 579 (Pa.Super.2002). A complaint must give the defendants fair notice of the plaintiff's claims and a summary of

the material facts that support those claims. *Id.;* Pa. R.C.P. No. 1019(a).

However, in order to qualify for post-trial relief, Uzamere must demonstrate that some problem with the pleadings prejudiced him at trial. *See Slappo v. J's Dev. Assoc., Inc.,* 791 A.2d 409 (Pa.Super.2002) (new trial not warranted merely because some irregularity occurred). He fails to argue that lack of specificity in the complaint caused him prejudice at any stage beyond the pleadings. As such, any pleading error is harmless and will not support post-trial relief. *Harman; Slappo.*

### 2.

█ Uzamere also claims the City solicitor lacked authority to file suit absent a specific resolution by City Council.

Section 1303 of The Third Class City Code (Code)[2] provides, in pertinent part:

> [t]he city solicitor shall commence and prosecute all and every suit or suits, action or actions, brought by the city, for or on account of any of the estates, rights, trusts, privileges, claims, or demands, .... *He shall do all and every professional act incident to the office which he may be lawfully authorized and required to do by the mayor, or by any ordinance or resolution of the council.*

53 P.S. § 36603 (emphasis added). Section 2403 of the Code specifically authorizes city council, by ordinance:

> To prohibit nuisances, ... and to require the removal of any nuisance or dangerous structure from public or private places upon notice to the owner, and, upon his default, to cause such removal and collect the cost thereof, together with a penalty of ten per centum

of such cost, from the owner, by an action in assumpsit....

53 P.S. § 37403.

Section 1761.03(e)(3) of the Codified Ordinances (Ordinance) of the City of New Castle, states "[t]he City may institute a suit to recover ... expenses to be charged against the property as a lien or against the person or legal entity violating the code as a judgment." Clearly, the City is empowered to institute the action here by statute and by ordinance.

In view of the language of the Code, we conclude the solicitor's authorization to proceed with suit need not be memorialized by resolution, and may take the form of a directive from the mayor. Uzamere failed to offer evidence that the solicitor received authorization from neither the mayor nor council. Thus, we find no error in the rejection of this argument.

### 3.

█ Uzamere argues the trial court erred in denying his motion for a continuance due to the death of a potential witness, Michael Elardo, the City's Building Code Enforcement Director. In reviewing a trial court's ruling on a request for a continuance based on the absence of a witness, our Supreme Court stated:

> [w]hile it is the policy of the law that the parties to an action have the benefit of the personal attendance of [a] material [witness] whenever reasonably practicable, *it necessarily lies within the discretion of the trial court to determine, in light of all of the circumstances of each case, whether or not a cause before it should be continued on the ground of absence of a material [witness]. Such a continuance will be granted only where it is shown that their expected testimony is competent and material, and not*

2. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

*merely cumulative or impeaching; that it is credible and would probably affect the result . . . .*

*Carey v. Phila. Transp. Co.*, 428 Pa. 321, 324, 237 A.2d 233, 235 (1968) (quoting 4 *Standard Pennsylvania Practice* § 627) (emphasis added); *see also Barner v. Juniata County Tax Claim Bureau*, 104 Pa. Cmwlth. 468, 522 A.2d 169 (1987).

■ The trial court may also require a party to show he exercised due diligence in attempting to secure the witness for trial. *Geiger v. Rouse*, 715 A.2d 454 (Pa.Super.1998); *Birdsall v. Carbon County Bd. of Assessment*, 168 Pa.Cmwlth. 266, 649 A.2d 740 (1994).

Here, Uzamere failed to show the testimony of the missing witness would affect the result. In fact, the trial court stated:

> As to the existence of any prejudice that might have arisen from the absence of [Elardo]'s testimony, it seems that these prejudices would have been to the City's detriment rather than to [Uzamere's]. [Elardo] was the City's employee and it had been his duty to represent and protect the interest of the City.... Uzamere testified at some length as to the contents of [his] conversations with the City and the City was powerless to refute that testimony. Uzamere's version was already much in evidence, so we cannot find any prejudice to Uzamere.

Trial Court's Slip Op. at 10.

Also, the trial court found Uzamere did not exercise due diligence in his attempt to secure Elardo's testimony. Specifically, the trial court stated "Uzamere elected to forego deposing [Elardo] despite years of opportunity. For some reason ... Uzamere chose not to avail himself of these opportunities; that was his choice, but, so

choosing, he cannot be sympathetically heard to complain of prejudice arising from that choice." *Id.* We find no error in this conclusion.

Finally, it is unclear how a temporary continuance would remedy the permanent problem of proof caused by the death of the witness. As such, we discern no abuse of discretion from the trial court's denial of Uzamere's request.

**4.**

Uzamere maintains that, as an agent of the Company, he is not responsible for costs because the City did not prove he "owned" the property.

**A.**

■ As to the facts, the murky relationship between Uzamere and the property requires some explanation. Uzamere testified that his out-of-state in-laws are owners of a corporation, National Infodata Corporation. No document was produced verifying incorporation, nor was the name or address of any corporate officer, director or shareholder disclosed. No witness was called to corroborate this testimony.

Uzamere also testified that his in-laws hired him to be their agent in Pennsylvania. As agent, he performed various tasks, including registering a fictitious name for the corporation. The fictitious name was Des–Maraf Company. Uzamere handled the purchase of the property and the mortgage of the property. His signature is the only signature on behalf of the owners on either document. He also visited the property, performed emergency repairs, and dealt with code enforcement personnel about the property.[3]

---

**3.** Uzamere also acknowledged sending a letter to the City in which he outlined a rehabilitation schedule for the property. In addition,

he reported criminal conduct which occurred in the property, at which time he informed police he was the landlord.

Uzamere admitted acting as agent of the Company and being an officer of the Company. Notes of Testimony (N.T.), 11/16/01 at 103. At times, the owners of the corporation did not pay attention to or talk to their attorney. N.T. at 104. At those times they did not elect a board or they did not elect a president. *Id.* Under those circumstances and others, Uzamere signed documents as an officer. N.T. at 104–05.

Uzamere also testified that his authority was limited. When work needed to be performed to upgrade the property, his in-laws declined to send him money. On those occasions, Uzamere considered his agency terminated, because he was not paid.

The jury was free to accept or reject Uzamere's testimony. Their verdict is consistent with a rejection both of the existence of a corporation and of limited authority in Uzamere. Viewing the evidence in the light most favorable to the City, there is no reason to disturb the verdict based on the unsupported oral testimony of the verdict loser.

### B.

As to the law, Section 1761.03(e) of the Ordinance provides, in relevant part:

> *The expenses incurred* [to abate a nuisance] ... *shall be paid by the responsible owner,* operator, or occupant *or by the persons who caused or maintained such public nuisance.* ... The City may institute a suit to recover such expenses to be charges ... against the person or legal entity violating the [BOCA] code as a judgment.

Section 1761.03(e) of the Ordinance (emphasis added).

Section 201.0 of the BOCA Code[4] defines an "owner" as:

> Any person, *agent,* operator, firm, or corporation having a legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; *or otherwise having control of the property* ....

Section 201.0 of the BOCA Code (emphasis added).

We discern no error in holding liable for costs of abatement a person other than a record title holder who possesses the property or who permits a public nuisance to continue. There are several reasons for this conclusion.

First and foremost, both the Ordinance in question and the BOCA Code adopted by the City authorize this approach. Uzamere did not challenge the validity of the Ordinance. Therefore, it is presumed valid, *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Bd.,* —— Pa. ——, 820 A.2d 143 (2002), and it supports the verdict.

Second, the Ordinance and BOCA Code's treatment of the liability of an agent controlling property is consistent with Section 355 of the Restatement (Second) of Agency, which provides:

> *An agent who has the custody of land* ... and who should realize that there is an undue risk that [its] condition will cause harm to the person, land, or chattels of others *is subject to liability for such harm caused during the continuance of his custody, by his failure to use care to take such reasonable precautions as he is authorized to take.*

Restatement (Second) of Agency, § 355 (1957) (emphasis added). Comment (a) of that section states in part:

---

**4.** Building Officials and Code Administrators Basic/National Property Maintenance Code (1st ed., 1984). The City, through its Ordinance, adopted the BOCA Code.

One who is in complete control over either land or chattels is under the same duty to protect others from the condition of such things as is the possessor of land or chattels ... The custodian in complete charge is not excused from liability by the fact that he is acting for the benefit of another. He is subject to the same liability and has the same immunities as the possessor. . . .

Section 355 of the Restatement (Second) of Agency comment a (1957). *See Ginn v. Lamp,* 234 Neb. 198, 450 N.W.2d 388 (1990) (landlord acting as custodial agent of property was subject to personal liability as if he were actual possessor or owner); *Simon v. Omaha Pub. Power Dist.,* 189 Neb. 183, 202 N.W.2d 157 (1972) (architects of construction site who, by written contract and conduct, assumed control over site, were liable for injury to business invitee); *J.C. Penney Co. v. Barrientez,* 411 P.2d 841 (Okla.1965) (retail store manager personally liable for damages for personal injuries suffered by customer on stairway under his control); *Filip v. Gagne,* 104 N.H. 14, 177 A.2d 509 (1962) (conservator who assumed landlord duties over ward's apartment building was personally liable for defective condition of common area that caused injury).

Here, the City produced ample evidence to show Uzamere, acting as an agent of the Company, exercised control over the property. Under the rationale of the Restatement, this may be a lawful basis for liability.

Third, the approach is consistent with a substantial body of Pennsylvania case law in a distinct but analogous area: a possessor of land may be responsible for a condition of real property that presents an unreasonable risk of injury to the public. Thus, in *Ignatowicz v. Pittsburgh,* 375 Pa. 352, 100 A.2d 608 (1953), our Supreme Court addressed a city ordinance imposing a duty on "owners" to maintain abutting sidewalks in proper and safe condition. The Court construed the word "owner" in the ordinance to include the person in possession.

The rationale of all of these decisions is that the duty imposed upon abutting owners arises out of actual dominion and control over property adjoining a sidewalk rather than ownership of a fee in the soil. It is only just and reasonable to allow the risks and burdens incident to ownership to fall on those who enjoy benefits through occupancy and control.

*Id.* at 357, 100 A.2d at 610.

Similarly, here, a party with control over a public nuisance may be held responsible by ordinance for its abatement. This is a reasonable exercise of municipal power intended to expeditiously protect public health and safety without confining a municipality to remedies arising from a deliberately obscure title.

### 5.

### A.

■ Uzamere next contends the jury instructions were unfairly prejudicial because they asked the jury to assume he owned the property rather than permitting the jury to make a factual determination on ownership.

■ When the correctness of the trial court's instructions is at issue, we view the instructions in their entirety to determine if an error was committed. *Agrecycle, Inc. v. City of Pittsburgh,* 783 A.2d 863 (Pa.Cmwlth.2001). We will not reverse for isolated inaccuracies; the charge as a whole must be shown to have caused prejudicial error. *Id.* Thus, to constitute reversible error, a jury instruction must be erroneous and harmful to the complaining party. *Id.*

Regarding ownership, the trial court twice instructed the jury:

[i]n order for the [City] to recover in this case, you must find that the following elements of the plaintiff's claim have been established.... First, that [Uzamere] was the owner of the property. Under the circumstances of this case, you may find the defendant to be the owner of the property only if you find that [Uzamere] acted as an agent for [the] Company and exercised control of the property as the agent of [the] Company.

N.T. at 140–41, 160–61.

The trial court twice instructed the jury that proof of ownership was an essential element of the City's burden. Because Uzamere is not the record title holder of the property, the trial court utilized the expanded definition of ownership found in the express provisions of the adopted BOCA Code. The trial court did not err in using the exact language of the unchallenged adopted BOCA Code. A review of the trial court's entire instructions reveals an accurate, comprehensive and fair explanation of all pertinent legal principles. No error is evident.

### B.

Uzamere argues the trial judge improperly introduced a new theory of liability that conflicted with the facts pled and the proof presented. Specifically, he contends the trial judge instructed the jury it could find liability based on an agency relationship between Uzamere and the Company.

Uzamere relies on *Hrivnak v. Perrone*, 231 Pa.Super. 151, 331 A.2d 507 (1974).

*Hrivnak* is not supportive. There, the plaintiff pled a cause of action sounding in trespass, and the evidence presented at trial supported this theory. During the jury charge, however, the trial judge stated the defendant could be found liable for negligence. Concluding the trial judge improperly introduced a new theory of liability which was not supported by the facts alleged or the evidence presented, our Superior Court granted a new trial.

Here, unlike in *Hrivnak*, the trial judge did not introduce a new theory of liability during the jury charge. In its complaint, the City alleged Uzamere trades and does business as the Company. It further averred Uzamere was the legal and/or equitable owner of the property. Throughout the trial, the City established Uzamere exercised control over the property as an agent of the Company. The trial judge charged the jury in accordance with Section 201.0 of the BOCA Code. No new theory was introduced. As such, the charge was consistent with the facts alleged and the evidence produced.[5]

### C.

Uzamere asserts the City's complaint failed to cite law to show the basis for the City's cause of action.

A plaintiff need only allege the material facts which form the basis of the cause of action asserted. *Pennsylvania State Troopers Ass'n v. Pennsylvania State Police*, 667 A.2d 38 (Pa.Cmwlth. 1995). In civil actions where the facts pled constitute the cause of action, the plaintiff need not specify the statute the plaintiff contends the defendant violated. *Id.* Rather, he must only allege the material

---

**5.** Uzamere also contends the jury instructions were incomplete because the trial judge failed to include other provisions of the BOCA Code. By failing to raise this as an error following the charge, however, Uzamere waived this claim. *In re Fickert's Estate*, 461 Pa. 653, 337 A.2d 592 (1975).

facts which form the basis of the cause of action which raise a violation of the statute. *Id.*

The City's complaint averred facts necessary to recover the demolition costs. The City was not required to plead the sections of the BOCA Code it contended Uzamere violated.

Moreover, as previously discussed Uzamere needed to show that the alleged pleading lapse prejudiced him at trial. Given the extensive pre-trial proceedings, Uzamere's failure to claim surprise at trial is not unexpected.

In summary, our review of the record fails to reveal any error by the trial court. Indeed, the judge conducted the trial with remarkable professionalism and equanimity. Based on the foregoing reasons, we affirm.

### ORDER

AND NOW, this 1st day of August, 2003, the order of the Court of Common Pleas of Lawrence County is affirmed.

Dissenting Opinion by Senior Judge KELLEY.

I respectfully dissent.

Section 2321 of the Third Class City Code (Code)[1] provides, in pertinent part:

Whenever the board of health shall determine ... that a public nuisance exists or is about to exist, it may order the nuisance to be removed abated, suspended, altered, or otherwise prevented or avoided. Notice of such order, bearing the official title of the board and the number of days for compliance therewith and the alternative remedy of the board in case of non-compliance, shall be served upon the person, if any, whom the board deems responsible therefor or

concerned therein, and upon the owner of the land, premises or other places whereon such a nuisance is or about to be, if any ...

53 P.S. § 37321.

In addition, Section 2324 of the Code provides, in pertinent part:

In any case where the persons ordered by the board of health to abate or prevent a public nuisance or anticipated public nuisance refuse or neglect to do so within the time specified in the original or any subsequent order of the board, then ... the board may direct its health officer and employes to execute such order; or if the execution of the said order requires ... any other work or service that may best be performed or contracted for by the agencies and employes of the city itself, then the board shall certify its order to the city council and council shall thereupon proceed to cause the execution of the order. In any case where the board of health or the council thus abates or prevents or causes the abatement or prevention of a public nuisance, the cost and expense of such work, services and materials shall be charged to the persons affected in their proper proportions; and upon non-payment of such charges, the city may file a lien therefore upon the affected premises in the name of and for the use of the city, as provided by law for municipal claims, in addition to the other remedies available for the collection of debts due the city ...

53 P.S. § 37324.

In addition, Section 2403 of the Code provides, in pertinent part:

In addition to other powers granted by this act, the council of each city shall have power, by ordinance:

1. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. §§ 35101–39701.

\* \* \*

**16. Nuisances and obstructions.—** To prohibit nuisances ... and to require the removal of any nuisance or dangerous structure from public or private places upon notice to the owner, and, upon his default, to cause such removal and collect the cost thereof, together with a penalty of ten percentum of such cost, from the owner, by an action in assumpsit. The cost of removal and the penalty may be entered as a lien against such property in accordance with existing provisions of law. In the exercise of the powers herein conferred, the city may institute proceedings in courts of equity.

53 P.S. 37403(16).[2]

Thus, with respect to notice regarding the abatement of a nuisance, the foregoing provisions of the Code make an explicit distinction between the person deemed to be responsible for the property in question and the owner of the property. In addition, with respect to the non-payment of the costs of abatement, the foregoing provisions specifically provide that the City may either pursue the claim *in rem* by entering a lien against the property, or *in personam* by pursuing an action in assumpsit against the owner of the property.

In addition, Section 1 of the Municipal Claims and Tax Liens Act (Act)[3,4] defines the term "municipal claim", in pertinent part, as "[t]he claim filed to recover.... For the removal of nuisances ..." 53 P.S. § 7101. Although the term "owner" is not defined in the Code, Section 1 of the Act defines the term "owner", in pertinent part, as "[t]he person or persons in whose name the property is registered, if registered according to law[5], and, in all other

**2.** *See also* Section 4140 of the Code, 53 P.S. § 39140, which provides, in pertinent part:

The council of any city may, by resolution, authorize and empower the mayor of such city to present a petition to the court of common pleas, setting forth that any property, building [or] premises ... located within said city has become a public nuisance, injurious or dangerous to the community and to the public health. Upon the presentation and hearing of such petition, if the nuisance complained of be not a public nuisance, per se, then the court may appoint three viewers, from the county board of viewers, to go upon the premises where said nuisance is alleged to exist—at a time to be fixed in the order appointing the same, of which time due notice shall be given to all persons affected ... and shall thereupon, being first duly sworn, view the property, premises [or] building ... shall hear the parties, their witnesses and counsel, and shall make due report thereof to the court appointing them ...

In addition, Section 4143 of the Code, 53 P.S. § 39143, provides, in pertinent part:

Whenever the award of viewers, or the verdict of a jury, shall find that a public nuisance exists, and the owner or owners of any property, premises [or] building ...

shall fail to abate the same within sixty days from the date of the judgment, the authorities of said city shall have full power and authority to enter upon said property, premises or building where said nuisance exists and abate the same, and shall not be liable in any form of action for so doing. The cost and expense of abating the same shall be deducted from any compensation awarded in said proceedings.

**3.** Act of May 16, 1923, P.L. 207, as amended, 53 P.S. §§ 7101–7505.

**4.** As both the Code and the Act apply to the pursuit and enforcement of municipal claims, they must be read and construed *in pari materia*. *See* Section 1932 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1932 ("[S]tatutes or parts of statutes are in pari materia when they relate to the same persons or thing or to the same class of persons or things ... Statutes in pari materia shall be construed together, if possible, as one statute.").

**5.** Where a deed registry is not required by law, the record owner is the "owner" for the purposes of satisfying the requirements of the Act setting forth the procedures to be used to

cases, means any person or persons in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, if any, or the reputed owner or owners thereof in the neighborhood of such property." *Id.*

The record in this matter shows that the fictitious name of Des–Maraf Co. was registered with the Commonwealth of Pennsylvania by a Delaware corporation called National Infodata Corporation. The application for registration of the fictitious name Des–Maraf Co. was signed by Uzamere as the authorized agent. The record further shows that the deed to the subject property was issued to the fictitious name of Des–Maraf Co. While it is true that Uzamere signed various documents as an agent of Des–Maraf Co., there is nothing in the record to indicate that Uzamere was doing business as or trading as Des Maraf Co. or National Infodata Corporation. Thus, any claim for the non-payment of the costs of abating the nuisance could only take the form of either a lien against the property or an action in assumpsit against the record owner of the property, and not Uzamere.

In addition, I believe that the agency aspects of the BOCA Code, as contained in the City's Ordinance, go only to notice of infractions of the BOCA Code, consistent with the provisions of Section 2321 of the Code. Thus, the foregoing agency provisions cannot be used to initiate an action in assumpsit to reclaim the costs of abating the nuisance on property which is titled in

a corporation's name, albeit through a fictitious name. I do not believe that Uzamere can be held responsible, as an owner, for the costs of abating the nuisance on the subject property. Moreover, the provisions of the City's Ordinance imposing personal liability on Uzamere for the costs of abatement are void to the extent that they conflict with the relevant provisions of the Code and the Act.[6]

Accordingly, unlike the Majority, I would reverse the trial court's order on the basis that Uzamere is not personally responsible for the costs of demolishing the residential structure located on Des–Maraf Co.'s property.

---

collect municipal claims. *In re Tax Claim Bureau, German Township, Mt. Sterling, 54½ Acres Miscellaneous Buildings,* 64 Pa.Cmwlth. 374, 439 A.2d 1349 (Pa.Cmwlth.1982); *Borough of Towanda v. Brannaka,* 61 Pa.Cmwlth. 622, 434 A.2d 889 (1981).

**6.** It must be noted that the City of New Castle is organized as an Optional Charter City of the Third Class pursuant to the provisions of the Optional Third Class City Charter Law,

Act of July 15, 1957, P.L. 901, *as amended,* 53 P.S. §§ 41101–45000. *See* 115 Pennsylvania Manual 6–57 (2001–2002). Nonetheless, the provisions of the City's Ordinance are void to the extent that they conflict with the provisions of the Code and the Act, statutes concerning substantive matters of statewide concern. *See, e.g., Devlin v. City of Philadelphia,* 809 A.2d 980 (Pa.Cmwlth.2002).