Gregory GRIFFIN and Filecia Griffin, on Behalf of Themselves and All Others Similarly Situated, Appellants,

v.

RENT–A–CENTER, INC., Appellee.

Superior Court of Pennsylvania.

Argued July 30, 2003.
Filed Feb. 12, 2004.

David A. Scholl, Newtown Square, for appellant.

Michael L. Kichline, Philadelphia, for appellee.

BEFORE: STEVENS, KLEIN, JJ., and McEWEN, P.J.E.

OPINION PER CURIAM:

¶ 1 This appeal has been taken by appellants, Gregory and Filecia Griffin, from the Order which dismissed, with prejudice, their second amended class action complaint in response to the preliminary objections filed by appellee, Rent–A–Center. We reverse and remand.

¶ 2 This action was commenced when a class-action complaint was filed in the Court of Common Pleas of Philadelphia County on December 20, 2000, which was served on Rent–A–Center on December 21, 2000. The action was removed to the United States District Court for the Eastern District of Pennsylvania on January 11, 2001, by Rent–A–Center but was subsequently remanded by the district court by order dated March 18, 2002. Thereafter, appellants, pursuant to the agreement of all counsel, filed a second amended class-action complaint which removed all references to the Rental–Purchase Agreement Act ("RPAA") and substituted references to the Goods and Services Installment Sales Act ("GSISA") in their stead. Appellee Rent–A–Center filed timely preliminary objections to the second amended complaint, requesting dismissal of the complaint on the grounds that:

(1) The GSISA was inapplicable to the transaction which was, in fact, subject to the RPAA; and

(2) The count under Section 201–2(4)(xxi) of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") failed to state a cause of action as plaintiffs had not "alleged all of the elements of common-law fraud under Pennsylvania law."

¶ 3 The trial court dismissed plaintiffs' second amended complaint with prejudice after concluding that the underlying transaction was, contrary to the holding of the Court of Common Pleas in *Anoushian v. Rent–Rite, Inc.,* No. 2679, November Term, 2001 (2002 WL 1023438), governed by the Rental–Purchase Agreement Act ("RPAA"), 42 Pa.C.S. §§ 6901 *et seq.* rather than the Goods and Services Installment Sales Act ("GSISA"), 69 P.S. §§ 1101 *et seq.* Appellants timely filed the instant appeal from the order since the order dismissed their complaint without leave to amend.

¶ 4 Preliminary objections in the nature of a demurrer may only be sustained where, taking all well pleaded **fac-**

tual averments in the complaint and all inferences fairly deducible therefrom as true, the law says with certainty that no recovery is possible. Pennsylvania is a fact pleading rather than a notice pleading jurisdiction. As a result, "courts are presumed to know the law and plaintiffs need only plead facts constituting the cause of action and **the courts will take judicial notice of the statute involved.**" *Heinly v. Commonwealth*, 153 Pa.Cmwlth. 599, 621 A.2d 1212, 1215 n. 5 (1993) (emphasis supplied). "The plaintiff is not required to specify the legal theory ... underlying the complaint." *Milton S. Hershey Medical Center v. Commonwealth Medical Professional Liability Catastrophe Loss Fund*, 763 A.2d 945, 952 (Pa.Cmwlth.2000), *aff'd.*, 573 Pa. 74, 821 A.2d 1205 (2003). *Accord: Schnupp v. Port Authority*, 710 A.2d 1235, 1239 (Pa.Cmwlth.1998); *Pennsylvania State Troopers Ass'n v. Pennsylvania State Police*, 667 A.2d 38, 41 n. 6 (Pa. Cmwlth.1995), *appeal denied*, 544 Pa. 617, 674 A.2d 1078 (1996) ("In civil actions where the facts in a complaint constitute the cause of action, the plaintiff need not specify the statute that the plaintiff contends defendant violated. The plaintiff need only allege the material facts which form the basis of a cause of action that raise a violation of that provision.") *See also: Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973, 980 (1985), *appeal denied*, (1986).

¶ 5 The plaintiffs in the instant case set forth the following facts in their complaint: [1]

4. The Plaintiffs had been, prior to the events described herein, customers of the Defendant for several years, having purchased a stereo, a refrigerator, a picture, a washing machine, and a computer from the Defendant. In each instance, the Plaintiffs ultimately purchased the items in issue, after having been given an allowance of the full amounts paid as rentals towards the purchase prices of the items.

5. On August 20, 1999, and January 15, 2000, the Plaintiffs entered into their most recent contracts with the Defendant, which involved, respectively, a bedroom set and a used computer. Copies of the contracts by which the Plaintiffs acquired the items in question are attached hereto as Exhibits "A" and "B", respectively.

6. The contracts at issue contain several disclosures regarding their payment terms and a Notice that the Plaintiffs are only leasing the property in bold print in designated boxes, and the rest of the terms in smaller, lighter print. The contact forms [sic] were printed out of line, obliterating some of the figures with printing and making it very difficult to match a particular disclosure with a particular number. The figures which are legible appear to indicate that the Defendant's so-called "Cash Prices" of these items are $1767.00 and $2079.50, which constitute an unconscionably excessive prices [sic] for such merchandise. The contract for the computer also erroneously designates that item as "new" when it in fact was used. However, the total of payments due under the first of these contracts appears to be $3237.51 if the items are paid over a term of 104 weeks, and the total of payments due under the second of these contracts appears to be $3842.04 if this item is paid over a term of 24 weeks.

---

1. References are to plaintiffs' second amended complaint.

7. The Plaintiffs did not carefully examine these contracts when they received them, and logically assumed that the terms would be approximately the same as those of their prior contracts with the Defendant. Specifically, they assumed that all of their rental payments resulting in excessive prices for the goods in issue as it was, would be credited towards the purchase prices.

8. In June, 2000, the Plaintiffs requested a statement from the Defendant as to how much they owed to the Defendant to purchase each of the items in question. At this time, they learned for the first time that the Defendant intended to give them credit for their full rental payments against the purchase prices of the items for only those payments made in the first ninety days after the contracts were executed, and credit for only half of the rental payments made thereafter. Moreover, the Defendant failed to credit several of their payments towards the balances at all, since their balances did not appear to be going down. Furthermore, the Defendant was unable to give them a precise figure as to how much they did owe and repeatedly informed them that it could not do so because their files were "missing."

9. On July 17, 2000, and August 6, 2000, the Plaintiffs sent letters to the Defendant, copies of which are attached hereto as Exhibits "C" and "D", respectively, to attempt to resolve the parties' problems. The Defendant's only response was form collection letters demanding the payments which the Plaintiffs withheld until these problems could be resolved.

10. In September, 2000, the Plaintiffs consulted counsel concerning these matters. On September 15, 2000, counsel sent a letter to the Defendant outlining the Plaintiffs' problems, a copy of which is attached hereto as Exhibit "E".

11. On September 22, 2000, one Timothy Edick, who purported to be a credit manager of the Defendant, telephoned counsel in response to this letter. Edick claimed that, while all payments made in the first ninety days after the transaction took place would be credited towards the purchase price, only half of the amount of the payments made thereafter would be credited towards the purchase price. His authority for that position was paragraph 9 of the contracts, one of the paragraphs written in small print in the contract. While this paragraph, which had never been enforced against the Plaintiffs before and of which they were unaware, does appear to state that only half of the payments made would be credited towards the purchase price, it says nothing about different treatment for payments made in the first ninety days.

12. Edick claimed that, while he could discuss the contract forms given to the Plaintiffs generally, he could not discuss their specific accounts at that time because he did not have access to their files, but that counsel should return a call to him on the next day and he would have the Plaintiffs' records.

13. When counsel did call the next day, Edick claimed that he had not located the Plaintiffs' records, but would have same shortly and then contact counsel. However, no further contacts were made. Counsel

thereafter called Edick five times between October 2, 2000, and October 7, 2000, attempting to receive a response, advising, in the last two messages, that this action may be filed if there were no response.

14. In light of the Defendant's failure to adhere to the terms of its contracts or respond to counsel's inquiries about the Plaintiffs' accounts, the Plaintiffs believe and therefore aver that the Defendant maintains very poor records of, and has little concern about, the balances of its customers' accounts, but is instead primarily concerned with attempting to collect weekly payments for as long as it can from its customers.

\* \* \* \*

30. The Defendant's consistent and pervasive violations of the GSISA constitute conduct which is fraudulent and calculated to create confusion in the minds of their customers, in violation of 73 P.S. section 201–2(4)(xxi) of the UTPCPL.

\* \* \* \*

¶ 6 These facts, when taken as true, are sufficient to establish a *prima facia* violation of the RPAA and the UTPCPL. The Rental–Purchase Agreement Act ("RPAA"), 42 Pa.C.S. §§ 6901 *et seq.,* which was enacted on July 11, 1996, is applicable to all rental-purchase agreements written in Pennsylvania. "Rental–Purchase Agreements" are **currently** defined under the Act as:

An agreement for the use of personal property by an individual primarily for personal, family or household purposes for an initial period of four months or less that is automatically renewable with each rental payment after the initial pe-

riod and that permits the lessee to acquire ownership of the property. The term shall not be construed to be, nor is it subject to laws governing, any of the following:

(1) A lease for agricultural, business or commercial purposes.

(2) A lease made to an organization.

(3) A lease of money or intangible personal property.

(4) A lease of a motor vehicle, motor home, mobile home or manufactured housing.

(5) A home solicitation sale under section 7 of the act of December 17, 1968 (P.L. 1224, No. 387), [footnote omitted] known as the Unfair Trade Practices and Consumer Protection Law.

(6) A retail installment sale, retail installment contract or retail installment account as defined in the act of October 28, 1966 (1st Sp.Sess., P.L. 55, No. 7), [footnote omitted] known as the Goods and Services Installment Sales Act.

(7) A security interest as defined in 13 Pa.C.S. § 1201 (relating to general definitions).

42 Pa.C.S. § 6902.

¶ 7 Expressly excluded from the definition of Rental–Purchase Agreements is a "retail installment sale, retail installment contract or retail installment account" which is subject to the Goods and Services Installment Sales Act ("GSISA"), 69 P.S. §§ 1101 *et seq.*

¶ 8 The Goods and Services Installment Sales Act applies to retail installment contracts, retail installment accounts, installment accounts, and revolving accounts, 69 P.S. § 1103, which are defined by the Act as:

(5) **"Retail installment sale"** or **"sale"** means the sale of goods or the furnish-

ing of services by a retail seller to a retail buyer for a time sale price payable in installments.

(6) **"Retail installment contract"** or **"contract"** means any contract for a retail installment sale between a buyer or a seller which provides for repayment in installments, whether or not such contract contains a title retention provision, and in which a time price differential is computed upon and added to the unpaid balance at the time of sale or where no time price differential is added but the goods or services are available at a lesser price if paid by cash or where the buyer, if he had paid cash, would have received any additional goods or services or any higher quality goods or services at no added cost over the total amount he pays in installments. When taken or given in connection with a retail installment sale, the term includes but is not limited to a security agreement and a contract for the bailment or leasing of goods by which the bailee or lessee contracts to pay as compensation for their use a sum substantially equivalent to or in excess of their value and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the goods upon full compliance with the terms of the contract. The term also includes any contract, obligation or agreement in the form of bailment or lease if the bailee or lessee has the option to renew the contract by making the payments specified in the contract, the contract obligates the bailor or lessor to transfer ownership of the property to the bailee or lessee upon full compliance by the bailee or lessee with his obligations under the contract, including any obligation incurred with respect to the exercise of an option by the bailee or lessee to renew the contract, and the payments contracted for by bailee or lessee, including

those payments pursuant to the exercise of an option by the bailee or lessee to renew the contract, are substantially equivalent to or in excess of the aggregate value of the property and services involved. With respect to a sale described in the previous sentence, the disclosures required under this title shall be calculated on the assumption that the bailee or lessee will exercise all of his options to renew the contract, make all payments specified in the contract, and become the owner of the property involved.

(7) **"Retail installment account"** or **"installment account"** or **"revolving account"** means an account established by an agreement pursuant to which the buyer promises to pay, in installments, to a retail seller or to a financing agency, his outstanding balance incurred in retail installment sales, whether or not a security interest in the goods sold is retained by the seller, and which provides for a service charge which is expressed as a percent of the periodic balances to accrue thereafter providing such charge is not capitalized or stated as a dollar amount in such agreement.

69 P.S. § 1201(5),(6),(7).

¶ 9 While appellants originally sought to set forth causes of action under the RPAA, upon remand from the United States District Court, counsel for appellants obtained leave to file a second amended complaint in light of the filing, on May 10, 2002, of the opinion of the trial court in *Anoushian v. Rent–Rite, Inc.*, No. 2679, November Term, 2001 (2002 WL 1023438).

¶ 10 The Philadelphia Court of Common Pleas in *Anoushian* had held that rental-purchase agreements covering jewelry and household furniture were subject to the GSISA and not the RPAA since "Rent–Rite leased the property to the Plaintiff for

a specified period of time, at the end of which the Plaintiff would acquire ownership of the property [but under which the] Plaintiff was not required to reach the end of this specified period and to purchase the property as the Agreements allowed the termination of the arrangement at any time".

¶ 11 As fate would have it, after plaintiffs amended their complaint to comply with the holding in *Anoushian,* by deleting the RPAA cause of action, another trial judge properly ruled that *Anoushian* was incorrectly decided and that the rental-purchase agreements in the instant case were subject to the RPAA and not the GSISA. The court then dismissed the second amended complaint based upon its belief that citation to the wrong statute was a fatal defect.

¶ 12 Appellants, in their statement of questions involved on appeal, present the following issues:

> Were the Defendant's "Pennsylvania Rental–Purchase Agreements" subject to the Pennsylvania Goods and Services Installment Sales Act, 69 P.S. section 1201, *et seq.* ("the GSISA"), rather than the Pennsylvania Rental Purchase Agreement Act, 42 Pa.C.S. section 6901, *et seq.* ("the RPAA"), by reason of a provision of the RPAA specifically providing that contracts otherwise subject to the GSISA were not "included" in the definition of contracts subject to the RPAA?

> Did the judge deciding this case err in not giving proper deference to a decision by another judge of the same court upholding the position of the Plaintiffs in a virtually identical case against another rent-to-own business?

¶ 13 Initially, it should be noted that effective February 7, 2003, the RPAA was amended to delete the phrase:

> "It [Rental–Purchase Agreement] does not include nor is it subject to laws governing any of the following:".

Substituted for this phrase, presumably in response to the decision in *Anoushian,* was the phrase: ...."

> "The term [Rental–Purchase Agreement] shall not be construed to be, nor is it subject to laws governing, any of the following:...".

42 Pa.C.S. § 6902.

¶ 14 While appellants contend that the change in the definition of "Rental–Purchase Agreement" may not be applied to their case, which was filed prior to the amendment, we find that the amendment was not a change but rather a clarification of the intent of the legislation which is, quite obviously, relevant to resolution of the claims presented by appellants. *See, e.g., Byrd v. Pennsylvania Board of Probation and Parole,* 826 A.2d 65 (Pa. Cmwlth.2003).

¶ 15 We have no hesitation in concluding that the Rental–Purchase Agreements in the instant case were subject to the RPAA as the statute existed when the lease was written and as the statute exists today. However, while we agree with the trial court that the complaint cited the wrong statute, we are unable to conclude that the complaint could properly be dismissed with prejudice.

¶ 16 The original complaint filed in this action on December 20, 2000, contained three counts: Count I alleged violation of the Consumer Leasing Act, 15 U.S.C. §§ 1667 *et seq.;* Count II alleged a violation of the RPAA; and Count III alleged a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1 *et seq.*

¶ 17 On remand from the United States District Court following dismissal of Count I, and after a status conference conducted

on June 3, 2002, (less than one month after publication of the decision in *Anoushian* ), the parties stipulated to the filing of an amended complaint containing only two counts, Count I, alleging a violation of the GSISA, and Count II, alleging a violation of the UTPCPL. Immediately following the filing of the preliminary objections, but prior to disposition thereof, the case was transferred to another judge who correctly ruled that the rental-purchase agreements were subject to the RPAA rather than the GSISA. Appellants, however, should have been granted leave to amend their complaint in response to this ruling since the factual averments contained therein, if accepted as true, set forth *prima facie* claims under the RPAA as well as under the UTPCPL.

¶ 18 We decline to accept the waiver argument urged upon us by appellee since appellants at all times prior to the issuance of the opinion in *Anoushian,* which we here hold was incorrectly decided, maintained that the actions of appellee had violated the RPAA.

¶ 19 Prior to institution of suit in this matter, counsel for Plaintiffs on September 15, 2000, sent the following letter to Defendant:

Dear Sir or Madam:

I represent your above-named long-time customer. Mr. Griffin last "rented" a used computer and a bedroom suite from your company in January 2000, and August 1999, respectively. He has been unable to obtain a statement of how much he owes to your company to purchase the items on these contracts and how these figures were computed. He is particularly distressed because he was informed that only part of his payments were credited to the balances owed and that payments for several months were considered rent and not credited to his balances at all. These practices appear

to be inconsistent with the agreements that he was given.

I should further advise you that I believe that these practices and several other aspects of these contracts are contrary to the apparently applicable law, the Pennsylvania Rental–Purchase Agreement Act, 69 P.S. §§ 6903(a)(1), (a)(3), (a)(4), (a)(9), (a)(10), (a)(11), (a)(12), (a)(14). We are considering a legal action on behalf of Mr. Griffin and possibly his wife Felicia on behalf of all of your similarly situated customers. In light of these violations, I do not believe that Mr. Griffin owes anything further to your company.

I would invite your responses to my inquiries regarding these accounts. Since I am representing him, I am also requesting that your company refrain from any further collection activities directed towards Mr. Griffin or his wife.

¶ 20 Plaintiffs' original complaint, while based on the exact factual averments contained in their second amended complaint at issue herein, set forth a cause of action for violation of the RPAA. Additionally, appellants, in their brief in opposition to the preliminary objections filed by appellee, alleged:

It is only in deference to the *Anoushian* directive that the RPAA does not apply to the transactions of the defendant at issue that these allegations are no longer pleaded in the present Complaint.

(Plaintiffs' Memorandum of Law in Opposition to Preliminary Objections to Second Amended Complaint, p. 3)

¶ 21 As we find that the facts set forth in the second amended complaint were sufficient to establish a *prima facie* cause of action under the RPAA and the UTPCPL, we vacate the order of December 16, 2002, and remand for the filing of an amended complaint.

¶ 22 Order reversed. Case remanded. Jurisdiction relinquished.

¶ 23 KLEIN, J., files a dissenting opinion.

## DISSENTING OPINION BY KLEIN, J.:

¶ 1 I agree with the majority that there is no cause of action in this case under the GSISA and that the RPAA is the statute which is properly applied to rent-to-own contracts.[2] I also agree with the general proposition stated by the majority that well pled facts will make out a cause of action even if the specific theory of recovery is incorrect or not mentioned. I must dissent nonetheless because I believe the majority has granted relief not sought on an issue that was not preserved for appeal, about which argument was never made.

¶ 2 I do not believe that the record in this matter supports the majority's holding. I first note that Griffin has waived all arguments on appeal except for the argument that the Goods and Services Act (GSISA) is the appropriate law. Griffin did not claim in his argument to our Court that regardless of the alleged violations of the statute cited in the complaint, the well-pled facts nonetheless set forth sufficient information that makes out a viable cause

of action (in this case, under the Rental–Purchase Agreement Act—RPAA.) Thus, I believe it is improper for the majority to make the argument for appellant and to fashion relief never requested. The sole relief requested by Griffin was to be allowed to proceed under the umbrella of the GSISA.[3]

¶ 3 This is not a jurisdictional issue that may be raised *sua sponte* by our Court. The rationale of the majority and the relief granted represents a specific argument never preserved by Griffin, never presented to the trial court, never addressed by the trial court opinion, and never argued before our Court.

¶ 4 Moreover, Griffin voluntarily abandoned his claim under the RPAA. The majority finds the argument not waived because Griffin had, in the original complaint, filed a claim under the RPAA. This is of no matter. The claim was given up and Griffin has put forth an all-or-nothing argument on appeal.[4]

¶ 5 Further, I believe the majority is incorrect in the determination that the facts, as pled, support an action under the RPAA. The RPAA sets forth the requirements of a rental-purchase agreement. It states what must and what may not be contained in such an agreement. For ex-

2. In addition to the well-founded rationale of the majority on this issue, I would also add that a plain reading of the statute, which references all requirements of "rental-purchase agreements" including the lessee's right to acquire ownership, makes it clear that the RPAA was intended to cover rent-to-own agreements.

3. It is understandable why Griffin prefers the GSISA to the RPAA. The RPAA specifically limits damages in a class action to a maximum of $500,000. *See* 42 Pa.C.S. § 6908(b). No such limit is found in the GSISA.

4. It might initially seem that Griffin was "sandbagged" by the trial court on this issue. Griffin had originally included a claim under

the RPAA, but abandoned that theory after a pre-trial conference with the trial court. The trial court has recently issued a decision in a similar case holding the GSISA to be the relevant law. Had Griffin been mislead by the trial court, there might well be equitable reasons to allow Griffin to amend the complaint. However, Griffin has not argued this. Moreover, it is obvious that the GSISA–RPAA issue was still alive as RAC continued to press its preliminary objections on the matter. Finally, the trial court (a different judge from the pre-trial judge) rendered its decision on the basis of the GSISA–RPAA issue. Clearly Griffin knew the issue was alive, yet chose not to argue it.

ample, if Griffin had averred in the complaint that the agreement never set forth amount and timing of the rental payments,[5] see 42 Pa.C.S. § 6903(a)(3), then that fact would support a claim under the RPAA. No such facts are to be found in the complaint. Rather, Griffin claims that Rent–A–Center provided misleading information in claiming some of the merchandise rented was new when it was really used. The RPAA requires a lessor to provide lessee with such information. The information was provided, but it is alleged that information was false. This might make out a *prima facie* claim under the UTCPL or common law fraud, but not under the RPAA.[6]

¶ 6 For the foregoing reasons I must dissent and I would affirm the dismissal of Griffin's complaint.

---

5. In fact, this information is provided on the agreement form.

6. Once again, it must be noted that Griffin waived the argument regarding the ability to proceed under some other law. Thus, Griffin has not sought nor is entitled to relief on this.