Richard M. Hughes, II, Trustee et al., Appellants
*v.* Redevelopment Authority of the City of
Wilkes-Barre.

Argued April 2, 1979, before Judges WILKINSON,
JR., BLATT and DISALLE, sitting as a panel of three.

*Frank Townend,* for appellants.

*Hugh F. Mundy,* with him *Donald D. McFadden,* for appellee.

OPINION BY JUDGE WILKINSON, JR., May 23, 1979:

In this appeal plaintiffs (appellants) seek review of a decision by the Court of Common Pleas of Luzerne County denying their motion for a new trial following an award of $55,000 by a jury for real estate taken by the Redevelopment Authority of the City of Wilkes-Barre (Authority) by power of eminent domain. We affirm.

The subject property, having a front footage of 25 feet on South Main Street and a depth of about 225 feet, had constructed on it a one-story masonry building utilized at all relevant times as a shoe store. By its declaration of taking, filed December 20, 1973, the Authority condemned the property for purposes of urban redevelopment. The building at the time of taking was substantially damaged as a result of a fire on July 10, 1973. Approximately four months before the fire the building had undergone repairs necessitated by flood damage resulting from hurricane Agnes on June 23, 1972.

Following appeals by both sides from the award of the Board of View, a jury on October 28, 1976

awarded damages of $55,000. In response to the lower court's request for special findings, the jury indicated that its award included no amount for machinery, equipment and fixtures. On denial of appellants' motion for a new trial this appeal was taken.

Fulfilling a constitutional mandate, Section 601 of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §1-601 directs that a "condemnee shall be entitled to just compensation for the taking, injury or destruction of his property. . . ." Section 602(a) of the Code, 26 P.S. §1-602(a) in turn defines "just compensation"

> [as] the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

The dispute in this case over the proper measure of damages centers initially on the jury's failure to include in its award any monies for machinery, equipment and fixtures[1] situated on the condemned premises. The Code, in Section 603(3), 26 P.S. §1-603(3) provides that consideration be given in the determination of fair market value to "machinery, equipment and fixtures *forming part of the real estate taken.*" (Emphasis added.)

Justice, now Chief Justice EAGEN, outlined the proper analytical framework in this area:

> In those instances where all or most of the machinery, equipment and fixtures of the economic unit are removable without significant

---

[1] Primarily at issue were two 7½ ton air-conditioners located in the basement of the building and wooden shelving in various locations.

injury to them, such that the economic unit is susceptible of continuance, as a comparable economic unit, in a new location, *only* those items of machinery, equipment and fixtures *not removable* from the condemned structure are to be considered a part of the realty taken by the condemnor. (Emphasis in original.)

*Singer v. Oil City Redevelopment Authority*, 437 Pa. 55, 65-66, 261 A.2d 594, 600 (1970).[2]

It is therefore necessary to consider the characteristics of the machinery, equipment and fixtures and its relationship to the condemned land and the building in which it is located. Machinery incapable of removal without significant injury is considered to be taken as part of the realty and just compensation therefor is required. However, if such items can

---

[2] Appellants in their brief attempt to urge the applicability of the "Assembled Economic Unit Doctrine" first announced in the *Singer* case. The record clearly fails to support either of the two principal grounds for invocation of the Doctrine *to wit*:

[W]hen such a portion of the assembled economic unit is not removable from the condemned property that that which is so removable will not constitute a comparable economic unit in a new location, then *all* machinery, equipment and fixtures, whether loose or attached, which are vital to the economic unit and a permanent installation therein, will be considered a part of the realty. . . .

Likewise, when the nature of the business requires a unique building for its operation, such that no other building within a reasonable distance is adaptable to the functioning of this business, then the condemned building, itself, will be considered an essential part of any meaningful economic unit in this industry. In this situation, even though all or most of the machinery, equipment and fixtures are removable, since no new site is available, condemnee cannot maintain his economic position by relocating. Therefore, *all* machinery, equipment and fixtures which are vital to the economic unit and a permanent installation therein will be considered a part of the real estate. . . . (Emphasis in original.)

*Singer, supra* at 66-67, 261 A.2d at 600-01.

be relocated they are considered personal property and no award for their taking is required.[3] Our careful review of the record failed to reveal any items adequately shown to form a part of the realty.[4] Indeed, the only direct evidence on this point supports a contrary conclusion. The following testimony was elicited on cross-examination of one of appellants' expert witnesses about certain shelving which had previously been relocated within the building:

Q. Mr. Zarecki, are these [indicating a photograph] the same shelves that were moved?

A. Yes, sir.

Q. And those shelves were moved without any damages to them at that time?

A. Yes, sir.

. . . .

Q. And you say that as of December 20, although these same shelves were moved once that on December 20th, 1973, those shelves could not be moved?

A. No, I didn't say that, *I said they could be moved.* (Emphasis added.)

---

[3] Indeed, in such a situation there has been no taking for which *constitutionally required just compensation* must be paid. Note however that the Code provides in Article VI-A, added by the Act of December 29, 1971, P.L. 640, *as amended*, 26 P.S. §1-601A *et seq.* "Special Damages For Displacement" whereby a condemnee may be able to recover, *inter alia*, reasonable expenses incurred in moving property not forming a part of the real estate taken. The provisions of Article VI-A although placed under a new heading are not entirely new, similar provisions having appeared in prior formulations of the Code.

[4] Appellants argue in their brief that the photographs in evidence were sufficient to show that at least the air-conditioning duct work was incapable of removal. Although we will not decide whether the photographs standing alone could support an award for their value it is clear from the verdict that no such allowance was made by the jury and we cannot say that they have capriciously disregarded competent evidence.

We are satisfied that the evidence at trial justified the jury's failure to include in its verdict any amount for machinery, equipment and fixtures.

Having failed to establish that any machinery, equipment and fixtures formed a part of the condemned property, the appellants' objection now made to the lower court's ruling striking expert Zarecki's testimony as to its value is moot.

Two other evidentiary rulings of the lower court are challenged in this appeal. The first challenges the refusal to strike expert Salvitti's valuation testimony on behalf of the Authority. Appellants contend that Mr. Salvitti improperly utilized a measure of value based on "Salvage Value" rather than a measure which would reflect the property's "highest and best reasonably available use." Section 603(2) of the Code, 26 P.S. §1-603(2). This argument simply lacks any merit. Mr. Salvitti testified to a fair market value for the subject property as of the date of taking of $34,000. On direct examination the witness explained that "it was [his] opinion that the subject property had land value only with only minimal building value due to the fact of the fire damaged condition." And on cross-examination:

Q. And can you explain your $4,000.00 value to the building?

A. In my opinion the building has only nominal value and therefore and based on the comparable land sales that are in the area, they support a land value of $30,000.00, and the building value due to the substantial damage, in my opinion, had a value of $4,000.00.

The witness went on to emphasize that, "It's my opinion that the subject property suffered sufficient fire damage that the only value there was the shell value." If, as this witness opined, the building had no intrinsic value above salvage then the condemned

property's "highest and best reasonably available use" would inhere in the land itself. Therefore, considered in context, Mr. Salvitti's valuation testimony was entirely appropriate; it was the jury's function to evaluate Mr. Salvitti's testimony concerning the inherent value of the building and in turn his opinion of overall value.

Appellants also challenge the lower court's refusal to permit the following question on cross-examination of Mr. Salvitti, "Isn't it true that before the fire of July 10th, you appraised the property at $110,000?" We cannot hold that it was reversible error to sustain the objection to this question. Counsel for appellants asserted below that the question was intended to reflect on the witness' credibility by showing an allegedly prior inconsistent statement. However, Mr. Salvitti at no time during the trial testified to the pre-fire value of the property either consistent or inconsistent with the questioned amount.

Appellants finally argue that the court below erroneously refused a request for a charge to the jury asking it to disregard in their computation of fair market value any damage sustained as a result of the Agnes Flood.[5] We may summarily dispose of this argument by pointing out that a trial judge need not instruct the jury on a point of law not applicable to the facts of the case. *Susser v. Wiley*, 350 Pa. 427, 39 A.2d 616 (1944).

Accordingly, we will enter the following

ORDER

AND Now, May 23, 1979, the order of the Court of Common Pleas of Luzerne County at No. 9603 of 1973, dated February 21, 1978, is hereby affirmed.

---

[5] The statutory provision relied upon by appellants is found in Section 602(c) of the Code, 26 P.S. §1-602(c).