**AGRECYCLE, INC., Appellant,**

**v.**

**CITY OF PITTSBURGH.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2001.
Decided Sept. 6, 2001.

Thomas T. Frampton, Pittsburgh, for appellant.

Susan E. Malie, Pittsburgh, for appellee.

Before SMITH, J., LEADBETTER, J., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Agrecycle, Inc. (Agrecycle) appeals from the judgment on the jury verdict entered in the Court of Common Pleas of Allegheny County in favor of the City of Pittsburgh (City) and against Agrecycle pursuant to Rule 227.4(1)(b) of the Pennsylvania Rules of Civil Procedure, Pa. R.C.P. No. 227.4(1)(b),[1] in its action against the City for a breach of contract and a breach of implied covenant of good faith and fair dealing. The ultimate issue is whether Agrecycle is entitled to a new trial. We affirm.

The facts relevant to the resolution of the issue are as follows. In October 1992, the City invited bids from private contractors for composting services consisting of retrieving compostable materials, such as leaves, plant materials, garden residue, herbivore manure, grass clippings and tree limbs, at the drop-off facilities operated by the City, and composting those materials, and selling them to third parties. In the Bid Specifications, the City stated that based on its activities in 1988 and 1989, it expected to deliver approximately 20,000 to 30,000 tons of compostable materials

---

**1.** Rule 227.4(1)(b) requires the prothonotary to enter judgment on the jury verdict, upon praecipe of a party, if the trial court does not dispose of the motion for post-trial relief within 120 days after the filing of the motion.

annually to a successful bidder. The City further stated, however, that "the exact quantity or quality of the compostable materials for this contract can not be guaranteed" and that "[u]nder no circumstances are these numbers warranted or guaranteed by the City." Paragraph 2.E of the Bid Specifications. The City also stated:

> All processing and/or other operational costs incurred upon or after delivery or pick up of compostables shall be the obligation of the Contractor. The Contractor may reject specific items that are not compostable and remove them from the compostables prior to loading onto the Contractor's trucks at the City's division sites. Otherwise, the compostables shall be accepted by the Contractor 'as is' without warranty (express or implied) of any kind, and Contractor shall handle the same at its own risk and shall be responsible for the proper disposal of any and all contaminants or residuals[.] . . . . When bidding on this contract, the bidder is encouraged to consider the possible cost of contaminant and residuals disposal and to adjust for this contingency in the bid.

Paragraph 6.D of the Bid Specifications.

After its successful bid, Agrecycle entered into an Agreement (Agreement) with the City on December 7, 1992, agreeing to provide the composting services to the City for the remainder of 1992 through December 31, 1995. In the Agreement, which incorporated the terms of the Bid Specifications, the City agreed to pay certain fees for Agrecycle's services based on the amount of the compostable materials delivered to Agrecycle. Agrecycle in turn agreed to pay the City a certain percentage of profits earned from selling the processed materials. The Articles of Agreement further provided:

> The City of Pittsburgh reserves the right, during the period while this contract is in force, to take bids and award separate contracts for individual jobs where they estimate the cost of any job to exceed FIVE THOUSAND DOLLARS.
>
> . . . .
>
> 6. B. QUANTITY OF WORK CONTINGENT UPON NEEDS—It is hereby agreed that *the City of Pittsburgh does not in any way guarantee or imply the amount of work or service which may required to be performed under this agreement, it being understood that needs cannot be forecast.* The intent of the proposal, and the subsequent award and contract if any be entered into, is to determine the lowest responsible bidder who shall be able, willing and ready to furnish . . . . materials, qualified men, and/or efficient service as required for special or emergency condition. (Emphasis added.)

During the term of the Agreement, the City delivered to Agrecycle 2512.08 tons of compostable materials in 1993; 1792.73 tons in 1994; and 2575.34 tons in 1995. Upon Agrecycle's request, the City permitted Agrecycle to substantially reduce the amount of the performance bond it was required to procure based on the amount of the compostable materials actually delivered.

In January 1997, Agrecycle commenced an action against the City claiming a breach of contract (Count I) and a breach of implied covenant of good faith and fair dealing (Count II). Agrecycle alleged that the City failed to deliver the volumes of the compostable materials as represented in the Bid Specifications; sent some compostable materials to landfills, instead of delivering them to Agrecycle; delivered contaminated compostable materials causing damages to its equipment; and failed to provide certain equipment as promised.

After a trial, the jury returned a verdict on November 18, 1999 in favor of the City and against Agrecycle. Agrecycle filed a timely motion for post-trial relief. Subsequently on August 3, 2000, eight months after Agrecycle filed the motion for post-trial relief and before the trial court ruled on the motion, the City filed a praecipe for judgment. The prothonotary then entered the judgment on the jury verdict in favor of the City and against Agrecycle pursuant to Pa. R.C.P. No. 227.4(1)(b). Agrecycle's appeal to this Court followed.

Agrecycle contends that it is entitled to a new trial because the trial court erred in charging the jury on the contract principles and responding to the question submitted by the jury during its deliberations.

■ In examining the jury charge, this Court's scope of review is limited to determine whether the trial court abused its discretion or committed an error of law controlling the outcome of the case. *Von der Heide v. Department of Transportation*, 553 Pa. 120, 718 A.2d 286 (1998).

Agrecycle first challenges the trial court's refusal to charge the jury on the implied covenant of good faith and fair dealing and the doctrine of necessary implication using the exact language contained in its Suggested Points for Charge (Suggested Charge) Nos. 16 and 17. The City contends, on the other hand, that those contract principles are inapplicable to this matter because the rights and obligations of the parties can be determined by the unambiguous language of the Agreement itself, and that the trial court, therefore, should not have charged the jury on those principles. The City further contends that the trial court adequately charged the jury on those principles, even if they are applicable to this matter.

■ The Restatement (Second) of Contracts § 205 (1981) provides that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." The courts have defined the duty of "good faith" as "[h]onesty in fact in the conduct or transaction concerned," adopting the definition set forth in Section 1201 of the Uniform Commercial Code, *as amended,* 13 Pa.C.S. § 1201. *Creeger Brick & Building Supply Inc. v. Mid–State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 153 (1989). The good faith obligation may be implied to allow enforcement of the contract terms in a manner that is consistent with the parties' reasonable expectations. *Killian v. McCulloch,* 850 F.Supp. 1239 (E.D.Pa. 1994).

■ In Pennsylvania, the courts have recognized the duty of good faith only in limited situations. *Creeger; Parkway Garage, Inc. v. City of Philadelphia,* 5 F.3d 685 (3rd Cir.1993). More specifically, the duty of good faith may not be implied where (1) a plaintiff has an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith; (2) such implied duty would result in defeating a party's express contractual rights specifically covered in the written contract by imposing obligations that the party contracted to avoid; or (3) there is no confidential or fiduciary relationship between the parties. *Department of Transportation v. E–Z Parks, Inc.,* 153 Pa.Cmwlth. 258, 620 A.2d 712 (1993), *appeal denied,* 534 Pa. 651, 627 A.2d 181 (1993); *USX Corp. v. Prime Leasing, Inc.,* 988 F.2d 433 (3rd Cir.1993); *Allstate Transportation Co. v. Southeastern Pennsylvania Transportation Authority,* 2000 WL 329015 (E.D.Pa., No. Civ.A. 97-1482, filed March 27, 2000).

■ In asserting that the City's duty of good faith should be implied in this matter, Agrecycle does not dispute that there was no overmastering dominance on one side in

negotiating and bargaining for the terms and conditions of the Agreement. Nor does it assert that there was a confidential or fiduciary relationship between the parties.

Moreover, the Agreement expressly and unambiguously provided that the City did not warrant or guarantee the quantity or quality of the compostable materials to be delivered to Agrecycle. The Bid Specifications stated that while the estimated amount of the compostable materials to be delivered by the City would be 20,000 to 30,000 tons a year, the City would not guarantee or warrant the actual quantity and quality of those materials under any circumstances. In the subsequently executed Articles of Agreement, the parties agreed that "the City .... does not in any way guarantee or imply the amount of work or service to be performed under this agreement." Paragraph 6.B of the Articles of Agreement. Agrecycle agreed to accept the materials delivered by the City, "as is," without any warranty as to their quality. The Agreement further provided: "The contract sets forth all the premises, agreements, conditions and understandings between City and Contractor, and there shall be no promises, agreements, conditions, or understandings, either oral or written between them other than those that are set forth in the contract." Paragraph 2.F and 6.D of the Bid Specifications. Finally, the City reserved its right to bid from other contractors for the same services, if the cost of any job exceeded $5000.

■ The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Sun Co. (R & M) v. Pennsylvania Turnpike Commission,* 708 A.2d 875 (Pa.Cmwlth. 1998). The intention of the parties must be ascertained from the document itself, if its terms are clear and unambiguous. *Id.*

To impose the duty on the City to deliver the amount of the compostable materials estimated in the Bid Specifications and to deliver the materials without any contaminants would be in total disregard of the unambiguous language in the Agreement rejecting such duty and would result in defeating the intention of the parties expressed in the Agreement. The City specifically contracted to avoid such duty in the Agreement. Hence, the implied covenant of good faith and fair dealing relied on by Agrecycle is inapplicable to the facts in this matter. *See also Allstate Transportation* (the duty of good faith may not be implied where, as here, the contract in question is not an "exclusive dealing contract" or a contract guaranteeing a minimum purchase amount).

■ The same reasoning is equally applicable in deciding the applicability of the doctrine of necessary implication. "In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they should do in order to carry out the purpose of the contract and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Daniel B. Van Campen Corp. v. Building & Construction Trades Council of Philadelphia & Vicinity,* 202 Pa.Super. 118, 195 A.2d 134, 136–37 (1963). The doctrine of necessary implication may be applied only in limited circumstances to prevent injustice where it is abundantly clear that the parties intended to be bound by the terms sought to be implied. *Kaplan v. Cablevision of PA., Inc.,* 448 Pa.Super. 306, 671 A.2d 716 (1996), *appeal denied,* 546 Pa. 645, 683 A.2d 883 (1996). The application of the doctrine in this matter would defeat the express, bargained—for terms of the Agreement, in which the City did not guar-

antee or warrant the quantity and quality of the compostable materials to be delivered to Agrecycle. Therefore, the doctrine is also inapplicable to this matter.

Because the implied duty of good faith and the doctrine of necessary implication were inapplicable to the facts in this matter, it was unnecessary for the trial court to give the jury instruction on those contract principles. *See Hughes v. Redevelopment Authority of the City of Wilkes–Barre,* 43 Pa.Cmwlth. 40, 402 A.2d 1082 (1979) (the trial judge need not instruct the jury on a point of law inapplicable to the facts of the case).

Even assuming that those contract principles were applicable, the jury instruction given by the trial court was adequate and does not provide a basis for granting a new trial. It is well established that the trial court has wide discretion in phrasing the jury charge and is free to formulate and express its charge as it sees fit; therefore, the trial court need not use any proposed points for charge verbatim so long as the language used correctly and accurately covers the area or point of law at issue. *Butler v. Kiwi, S.A.,* 412 Pa.Super. 591, 604 A.2d 270 (1992), *appeal denied,* 531 Pa. 650, 613 A.2d 556 (1992); *Robertson v. Atlantic Richfield Petroleum Products Co.,* 371 Pa.Super. 49, 537 A.2d 814 (1987), *appeal denied,* 520 Pa. 590, 551 A.2d 216 (1988).

Where the jury instruction fairly and adequately apprises the jury of the relevant law and guides the jury in its deliberations, a new trial is not warranted. *Chicchi v. Southeastern Pennsylvania Transportation Authority,* 727 A.2d 604 (Pa.Cmwlth.1999), *appeal denied,* 560 Pa. 750, 747 A.2d 371 (1999). Error in a jury charge is a sufficient ground for a new trial, only if the charge as a whole is inadequate or not clear, or has a tendency to mislead or confuse, rather than clarify, a material issue. *Stewart v. Motts,* 539 Pa. 596, 654 A.2d 535 (1995). To constitute a reversible error, the jury charge, when considered in its entirety, must be not only erroneous but also prejudicial to the complaining party. *Chicchi.*

Agrecycle requested that the trial court charge the jury on the implied covenant of good faith and fair dealing using the language contained in its Suggested Charge Nos. 11, 14 and 16. During the discussion with the trial court, Agrecycle's counsel stated to the trial court judge: "I would prefer 14 and 11. However, that is your call." *Id.* at 1250. The trial court then charged the jury on the duty of good faith using the language contained in Agrecycle's Suggested Charge Nos. 11 and 14: "Along with the express terms of a contract, a contracted party obligates itself to a duty of good faith and fair dealing in the performance and enforcement of the contract." N.T., p. 1380.[2] The trial court's charge adequately and accurately covered the substance of the law on the implied duty of good faith.

Agrecycle asserts, however, that the trial court erred in rejecting the Suggested Charge Nos. 16, which stated:

A complete list of actions that amount to a violation of the covenant of good faith and fair dealing is impossible but the following types of actions have been recognized by the Courts as such violations: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms and interfer-

**2.** In a memorandum opinion filed after Agrecycle appealed the judgment to this Court, the trial court stated that it should have more extensively charged the jury on the implied covenant of good faith and fair dealing.

ence with or failure to cooperate in the other parties' performance.[3]

 Because the trial court had wide discretion to phrase its jury charge, the mere refusal to state the "examples" of bad faith using the exact language contained in the Suggested Charge No. 16 cannot be considered a reversible error warranting a new trial. Moreover, Agrecycle's counsel never objected to the trial court's jury instruction on the implied duty of good faith after it was given. Where, as here, the party failed to raise an objection to the jury charge at its conclusion, the objection to the charge may not be raised later. *Robertson.*

 As to the doctrine of necessary implication, the trial court charged the jury: "In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and judgment they should do in order to carry out the purpose for which the contract was made." N.T., p. 1380. The trial court's charge included most of the language contained in the Suggested Charge No. 17 and accurately stated the substance of the doctrine. Hence, Agrecycle's challenge to the trial court's charge on the doctrine of necessary implication is likewise without merit.

 Agrecycle next challenges the trial court's rejection of its Suggested Charge Nos. 18 and 19 reciting Sections 1501 and 1502(a) of the Municipal Waste Planning, Recycling and Waste Reduction Act (Act), Act of July 28, 1988, P.L. 556, 53 P.S. §§ 4000.1501 and 4000.1502(a), which regulate establishment and implementation of recycling programs by the municipalities and the leaf waste processing. However, the fact that the City entered into the Agreement with Agrecycle to implement the recycling program as required by the Act and may not have been in total compliance with the Act was irrelevant to the determination of the parties' contractual rights and obligations under the Agreement. Therefore, the trial court did not abuse its discretion in rejecting the Suggested Charge Nos. 18 and 19.

 Agrecycle next contends that the trial court erred in rejecting the Suggested Charge No. 29, which stated: "The law is well settled that a party to a contract cannot claim its benefits where he is the first to violate its terms. Likewise Pennsylvania law prevents one who materially breaches a contract from relying upon defenses set forth in the contract it has breached." Agrecycle argues that the jury should have been told that the City, having breached the Agreement, could not rely on the provisions of the Agreement providing that the City did not guarantee or warrant the quantity and quality of the composting materials to be delivered by the City. However, the Suggested Charge No. 29 could have misled the jury regarding the respective rights and obligations of the parties under the Agreement, by suggesting the jury that it could disregard the express and unambiguous terms of the Agreement. Hence, the trial court did not abuse its discretion in rejecting the Suggested Charge No. 29.

 Finally, Agrecycle contends the trial court improperly responded to the following question submitted by the jury during its deliberations: "If we determine that this contract is awarded in bad faith, that the City had little or no intention of fulfilling its obligation, is that considered a breach of contract." N.T., p. 1389.

---

**3.** The language used in the Suggested Charge No. 16 is *contained* in Comment d of the Restatement (Second) of Contract § 205 (1981).

■ Where, as here, a jury returns on its own motion and indicates confusion, the court has a duty to give such additional instructions on the law as the court may deem necessary to clarify the jury's doubt or confusion. *Chicchi; Smick v. City of Philadelphia,* 161 Pa.Cmwlth. 622, 638 A.2d 287 (1994), *appeal denied,* 539 Pa. 660, 651 A.2d 546 (1994). In this matter, the trial court responded to the question submitted by the jury as follows:

> To answer your question that you asked it: No. Did they fulfill their obligation under the terms of this contract? The Plaintiff is alleging that City of Pittsburgh did not perform in accordance with the terms of this particular contract. A breach of contract occurs when a party to the contract fails to perform any contractual duty or immediate performance, or violates an obligation, engagement or duty.

N.T., p. 1393.

■ It is well established that it is within the sound discretion of the trial judge to determine the scope of the additional instructions to be given to the jury that has expressed confusion. *Smick.* The additional charge given by the trial court in this matter was the correct statement of the law. Moreover, Agrecycle's counsel did not object to the trial court's response to the question submitted by the jury after it was given. Therefore, Agrecycle's contention is without merit.

Accordingly, the judgment entered on the jury verdict in favor of the City and against Agrecycle is affirmed.

Judge SMITH dissents.

*ORDER*

AND NOW, this 6th day of September, 2001, the judgment on the jury verdict entered in the Court of Common Pleas of Allegheny County in the above-captioned matter in favor of the City of Pittsburgh and against Agrecycle, Inc. is hereby affirmed.