SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY,
Appellant,

v.

Trudy HOLMES and Gregory Holmes.

Commonwealth Court of Pennsylvania.

Argued June 5, 2003.
Decided Nov. 12, 2003.

Michael A. Hamilton, Philadelphia, for appellant.

Frederic I. Weinberg, Philadelphia, for appellee.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, (P.), and KELLEY, Senior Judge.

## OPINION BY Judge LEAVITT.

The Southeastern Pennsylvania Transportation Authority (SEPTA) has filed an interlocutory appeal of a decision of the Court of Common Pleas of Philadelphia County (trial court) to deny SEPTA's Motion for Judgment on the Pleadings.[1] The question is whether SEPTA can be held liable for its alleged mishandling of certain personal injury claims of SEPTA passengers under the bad faith provisions of the Judicial Code or under a theory of breach of good faith and fair dealing.

## HISTORY OF THE CASE

On April 6, 1990, Trudy Holmes and Gregory Holmes, Jr. (Appellees), were injured while passengers in a motor vehicle owned and operated by SEPTA.[2] In 1992, Appellees filed suit against SEPTA for payment of first party benefits, i.e., medical and wage loss benefits. After litigation, including an appeal by SEPTA to this Court, SEPTA paid the disputed first party benefits, with interest, costs and attorney fees, in the amount of $46,000.

On April 3, 1992, Appellees filed a second action against SEPTA and other defendants seeking damages for bodily injury caused by the April 6, 1990 accident.[3] In January of 1996, the parties agreed that Appellees would pursue an uninsured motorist benefits claim, not a liability claim, against SEPTA; in that proceeding SEPTA would raise its defense that it was not liable because the use of its vehicle for transporting Appellees had not been authorized. On August 28, 1997, arbitration resulted in an award of $15,000 in favor of each Appellee. SEPTA appealed.

1. SEPTA was granted permission to file an interlocutory appeal pursuant to 42 Pa.C.S. § 702(b), which states:

(b) Interlocutory appeals by permission.— When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

This Court granted SEPTA's appeal by permission by order of April 2, 2003, which also directed the trial court to file an opinion pursuant to Pa. R.A.P.1925 on or before April 30, 2003. Oral argument was heard by this Court on June 5, 2003. On June 25, 2003, the trial court issued its Pa. R.A.P.1925 opinion. Thereafter, SEPTA requested and was granted permission to file a post-submission brief to address the trial court opinion. That brief was filed on September 26, 2003.

2. The SEPTA employee was a family member, Gregory Holmes, Sr., who, according to SEPTA, was not authorized to use the SEPTA vehicle for personal use.

3. The defendant driving the other vehicle in the accident was insured by an insolvent Louisiana-domiciled insurer.

Thereafter, Appellees' counsel forwarded documents "routinely accepted within the Philadelphia legal community as proof of no insurance [by the tortfeasor.]" Reproduced Record 15a. (R.R. ——). SEPTA denied their authenticity. In 1998, new counsel entered an appearance on behalf of SEPTA, who questioned the amount of bodily injury owed and refused to accept an affidavit of counsel that Appellees had not received a payment from the Louisiana Insurance Guarantee Association on behalf of the driver of the other vehicle to the accident. After numerous discussions, SEPTA agreed to pay the arbitration award amount, but it demanded a broad release that would bar Appellees from pursuing a bad faith claim against SEPTA. This demand was claimed to be outside the settlement, and Appellees commenced litigation to enforce its version of the settlement. The trial court scheduled the uninsured motorist issue for trial. Finally, on September 8, 1999, SEPTA, by its counsel, agreed to pay the arbitration award without requiring a release.

On November 5, 2001, Appellees filed a complaint[4] against SEPTA alleging that by filing meritless appeals, refusing to accept Appellees' proferred documentation and adding new terms to a settlement, SEPTA "created unnecessary delay, unnecessary litigation, and otherwise stalled attempts to obtain first party coverage and uninsured motorist coverage to which [Appellees] were both entitled." R.R. 77a–78a. The complaint set forth three counts: (1) violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law; (2) statutory bad faith under 42 Pa.C.S. § 8371; and (3) breach of duty of good faith and fair dealing.

On December 4, 2001, SEPTA filed preliminary objections. Appellees then withdrew its claim under the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law. The trial court denied SEPTA's preliminary objections to the remaining counts.

On October 23, 2002, SEPTA filed a Motion for Judgment on the Pleadings. It asserted the following: (1) SEPTA, a self-insured government agency, cannot be held liable in tort for bad faith claims handling under 42 Pa.C.S. § 8371; (2) SEPTA is not subject to a claim for breach of the duty of good faith and fair dealing because it did not have a contract with Appellees; and (3) Appellees' claims are barred under Pa. R.C.P. No.1020[5] since they failed to join these claims in their underlying actions for uninsured motorist and first party benefits.

On December 20, 2002, the trial court denied SEPTA's Motion for Judgment on the Pleadings, and SEPTA appealed to this Court.[6] Before this Court SEPTA

4. On August 31, 2001, Appellees issued a writ of summons to SEPTA. On October 4, 2001, SEPTA filed a Praecipe for a Rule to File a Complaint, requiring the Appellees to file *its* complaint.

5. It provides,

(d)(1) If a transaction or occurrence gives rise to more than one cause of action against the same person, including causes of action in the alternative, they shall be joined in separate counts in the action against any such person.

✳ ✳ ✳

(4) Failure to join a cause of action as required by subdivision (d)(1) of this Rule shall be deemed a waiver of that cause of action as against all parties to the action. Pa.R.C.P.1020.

6. On January 21, 2003, SEPTA filed a Petition to Amend the December 20, 2002 order with the trial court to include the statements specified in 42 Pa.C.S. § 702(b) and Pa. R.A.P. 1311(b). It also filed a notice of direct appeal

raises the same three issues it raised to the trial court and asserts that the trial court erred in its holding on each issue. We consider these issues *seriatim*.

## LIABILITY UNDER 42 Pa.C.S. § 8371

 SEPTA asserts that there are two fundamental flaws to Appellees' bad faith claim brought under the Judicial Code, 42 Pa.C.S. § 8371.[7] First, SEPTA enjoys sovereign immunity unless the claim falls into one of the exceptions to sovereign immunity established by the legislature, and liability for bad faith claims handling is not one of the enumerated exceptions. Second, SEPTA is a self-insured, not an insurance company. It contends that 42 Pa.C.S. § 8371 only applies to insurance companies that have assumed the liability of others by the issuance of an insurance policy, and it has no application to a self-insured. We agree.

 As a "Commonwealth party," SEPTA enjoys sovereign immunity. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986).[8] To overcome sovereign immunity, a plaintiff must show that the Commonwealth party would be held liable in tort under common law or statute but for the defense of sovereign immunity. 42 Pa.C.S. § 8522(a)[9]; *Fidanza v. Department of Transportation*, 655 A.2d 1076 (Pa. Cmwlth.1995). Next, the plaintiff must establish that the cause of action falls within one of the specifically enumerated exceptions to sovereign immunity set forth at 42 Pa.C.S. § 8522(b). Appellees cannot satisfy either burden.

Our Supreme Court has refused to recognize the existence of a common law tort of bad faith against an insurer that refuses, without proper cause, to compensate an insured for a loss. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 509, 431 A.2d 966, 970 (1981).[10] Assuming, *arguendo*, that SEPTA is an insurer, there is no common law tort of bad faith claims handling. Accordingly, Appellees must show a statutory basis for tort liability; the statutory basis claimed by Appellees is 42 Pa.C.S. § 8371.

However, even assuming that 42 Pa.C.S. § 8371 applies to SEPTA, a point vigor-

with this Court, based on the Collateral Order Doctrine, which was *sua sponte* dismissed by this Court. On January 28, 2003, the trial court signed an amended order granting SEPTA's Petition to Amend. Thus all parties and the trial court agreed that the issues presented in the matter below involved controlling issues of law. SEPTA sought timely review by this Court which certified the interlocutory order for review.

7. The text of this provision is found *infra* on pages 8–9.

8. Appellees argue that *Feingold's* holding on SEPTA's sovereign immunity is limited to the facts of that case. This Court has previously called such an argument "absurd." *Chambers v. Southeastern Pennsylvania Transportation Authority*, 128 Pa.Cmwlth. 368, 563 A.2d 603, 605 (1989).

9. It provides,
 (a) Liability imposed.—The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.
 42 Pa.C.S. § 8522(a).

10. The Supreme Court, however, held open the possibility of emotional distress damages on a contract claim. *Id.*

ously contested by SEPTA, it is not settled that this statutory provision establishes a tort. Our Supreme Court recently addressed this question in *Mishoe v. Erie Ins. Co.*, 573 Pa. 267, 824 A.2d 1153, 1161 n. 11 (2003), and noted that "proper characterization of Section 8371 claims is a matter that is unsettled."[11] We decline here to decide as a matter of law that claims brought under Section 8371 sound in tort.

Even if a Section 8371 claim sounded in tort, such tortious conduct does not fall within one of the enumerated exceptions to sovereign immunity.[12] Immunity is waived for the negligent "operation of any motor vehicle in the possession or control of a Commonwealth party." 42 Pa.C.S. § 8522(b)(1). The scope of the motor vehicle liability exception has been carefully limited to *operation* of a vehicle by our Supreme Court. *Love v. Philadelphia*, 518 Pa. 370, 375, 543 A.2d 531, 533 (1988)(interpreting the statutory exception strictly to the actual operation of a vehicle and not acts ancillary to the actual opera-

tion). This Court has declined to apply the vehicle liability exception to cases that do not involve the actual movement of a vehicle. *See, e.g., Bottoms v. Southeastern Pennsylvania Transportation Authority*, 805 A.2d 47 (Pa.Cmwlth.2002). In short, SEPTA's alleged failure to promptly settle claims for first party and uninsured motorists' benefits does not fall within the motor vehicle exception to sovereign immunity.[13]

As has been noted by Justice Newman, the characterization of a Section 8371 claim as a tort or contract claim "has no bearing on the outcome." *Birth Center v. St. Paul Companies, Inc.*, 567 Pa. 386, 407, 787 A.2d 376, 389 (2001). The real question is whether 42 Pa.C.S. § 8371 applies to SEPTA, which is in the business of public transportation not insurance. Appellees contend that because SEPTA is required to demonstrate financial responsibility for losses caused by its vehicles either by purchasing insurance or by establishing a self-insurance fund, it functions as an "insurer"[14] and can, therefore, be held liable under 42 Pa.C.S. §§ 8371.

11. The Court analyzed the issue as follows:

> Proper characterization of section 8371 claims is a matter that is unsettled. *See Birth Ctr. v. St. Paul Cos.*, 567 Pa. 386, 787 A.2d 376, 389 (2001) (noting that characterization of claim is irrelevant to outcome of case); *Birth Ctr.*, 787 A.2d at 390–91 (Nigro, J., concurring) (claims under section 8371 are tort claims; separate bad faith cause of action exists at common law that is rooted in contract); *Birth Ctr.*, 787 A.2d at 391–94 (Zappala, J., dissenting) (bad faith claims are based in tort rather than contract); *see also Woody v. State Farm Fire & Cas. Co.*, 965 F.Supp. 691, 695 (E.D.Pa. 1997) (claims arising under section 8371 can be characterized as either tort or contract claims); *Nelson [v. State Farm Mut. Ins. Co.*, 988 F.Supp. 527 (E.D.Pa.1997)] at 534 (rejecting *Woody;* claims arising under section 8371 sound in tort rather than contract).

*Mishoe*, 573 Pa. at 281 n. 11, 824 A.2d 1153, 1161 n. 11.

12. Exceptions to sovereign immunity must be strictly construed as to uphold legislative intent and insulate the Commonwealth and its political subdivisions from tort liability. *Warnecki v. Southeastern Pennsylvania Transportation Authority*, 689 A.2d 1023, 1025 (Pa. Cmwlth.1997).

13. Appellees argue that sovereign immunity has no bearing on SEPTA's bad faith. Alternatively, it contends that bad faith claims handling falls within the motor vehicle exception to sovereign immunity.

14. Appellees direct the Court's attention to *Modesta v. Southeastern Pennsylvania Transportation Authority*, 503 Pa. 437, 469 A.2d 1019 (1983)(SEPTA, even though a self-insurer was required under the No–Fault Motor Vehicle Insurance Act to pay uninsured motorists' benefits, where applicable, to injured passengers). The continued significance of *Modesta* is uncertain in light of the repeal of the No–Fault Motor Vehicle Act.

As with all questions of statutory construction, we begin with the text of the provision in question. The Judicial Code states as follows:

§ 8371. Actions on insurance policies.

In an action arising under an *insurance policy*, if the court finds that the *insurer* has acted in bad faith toward the *insured*, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371 (emphasis added). The Judicial Code does not define "insurance policy," "insurer" [15] or "insured." Accordingly, it is appropriate to look to the definitions provided in other sources and in related statutes for guidance on their meaning.[16] We do so here.

The Insurance Department Act of 1921, Act of May 17, 1921, P.L. 789, *as amended*, 40 P.S. § 221.3, defines "insurer" [17] as follows:

[A]ny *person who is doing, has done, purports to do, or is licensed to do an insurance business*, and is or has been

---

The coverages that must be provided by any self-insured motorist are set forth in the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1787. Uninsured motorist coverage must be provided by self-insureds. However, it can be waived by one who purchases motor vehicle insurance. 75 Pa.C.S. § 1731(b). This difference is recognition by the legislature that insurance and self-insurance are not synonymous undertakings.

15. In its Pa. R.A.P.1925 opinion, the trial court asserted that the meaning of the term "insurer" as used in 42 Pa.C.S. § 8371 was a question for the jury. In support, it directs our attention to *David v. Veitscher Magnesitwerke Actien Gesellschaft*, 348 Pa. 335, 35 A.2d 346 (1944).

In that case, Dr. David sued his former employer, VMAG, an Austrian company, to enforce his pension benefits. VMAG asserted that a decree passed by the German Government of Austria in 1938 to exclude Jews from German economic life and another decree passed in 1940 to prohibit payments to enemies nullified his pension rights. The Supreme Court noted that the first decree was "dishonest and brutal, and contrary to the natural dictates of justice." *Id.* at 345, 35 A.2d at 350. However, it did not pass on the enforceability of this "vicious and barbarous" decree except to give it strict construction. Accordingly, it held that because Dr. David's pension rights had vested prior to the decree's passage, and because the decree did not apply to pension benefits, VMAG was required to

pay Dr. David his pension benefits. In *dictum*, the Court noted that if there had been a dispute about the translation of this decree, it might be submitted to a jury. But there was no dispute.

The meaning of a statute is for the courts to decide. *Donnelly v. Bauer*, 553 Pa. 596, 720 A.2d 447 (1998). The law is evidence of itself. It was simply error for the trial court to hold that the jury could hear evidence on the meaning of the term "insurer," and the *David* case is inapposite.

16. Words and phrases are to be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition. 1 Pa.C.S. § 1903(a). Moreover, the meaning of 42 Pa.C.S. § 8371 may be discerned by reference to analogous Pennsylvania insurance law. As stated in 1 Pa.C.S. § 1921(c): "[w]hen the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters ... (5) ... other statutes upon the same or similar subjects ."

17. "Motor vehicle insurer" or "insurer" is also defined under 75 Pa.C.S. § 1801 as "[a]n entity licensed to write motor vehicle insurance in the Commonwealth."

subject to the authority of, or to liquidation, rehabilitation, reorganization or conservation by any insurance commissioner.

Section 503 of The Insurance Department Act of 1921 (emphasis added).[18] A "policy of insurance" is, *"[a]n instrument in writing,* by which one party (insurer), in consideration of a premium, engages to indemnify another (insured) against a contingent loss." BLACK'S LAW DICTIONARY 1157 (6th ed.1990).[19] Finally, under the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), an "insured" is defined as "[a]n individual identified by name as an insured in a *policy of* motor vehicle liability *insurance."* 75 Pa. C.S § 1702 (emphasis added).[20]

SEPTA is not licensed as an insurer, and it does not do, or even purport to do, the business of insurance in the Commonwealth. It does not issue policies; collect premium; or agree to accept the liability of others in exchange for consideration. Appellees are not "insureds" because they have not produced a policy that names them as insureds. In short, the predicates for bad faith liability under 42 Pa.C.S. § 8371 cannot be shown here.

SEPTA discharged its obligation to pay statutory benefits to Appellees, but it did not insure against that obligation. As a condition of having its vehicles registered by the Department of Transportation, SEPTA was required to demonstrate that it would be financially responsible[21] for bodily injury in the amount of $15,000 and property damage in the amount of $5,000, caused by the negligent operation of SEPTA's vehicles.[22] Proof of financial responsibility for the negligent operation of the registrant's motor vehicle can be demonstrated in one of three ways.

Proof of financial responsibility may be furnished by filing evidence satisfactory

---

**18.** *See also "Insurer.* The underwriter or insurance company with whom a contract of insurance is made. The one who assumes risk or underwrites a policy, or the underwriter or company with whom contract of insurance is made." BLACK'S LAW DICTIONARY 808 (6th ed.1990).

**19.** Under the insurance regulatory statutes, a policy must be written, and it may not be issued without prior review and approval of the Insurance Department. Section 354 of The Insurance Company Law of 1921, P.L. 682, *as amended,* 40 P.S. § 477b.

**20.** The terms "insurers" or "self insured" provide no additional guidance in this matter. "Insurer" is defined as " '[i]nsurer' or 'insurance company.' A motor vehicle liability insurer subject to the requirements of this chapter." 75 Pa. C.S § 1702. "Self-insurer" is defined as, "[a]n entity providing benefits and qualified in the manner set forth in section 1787 (relating to self-insurance)." *Id.*

**21.** State and local financial responsibility laws are enacted where a particular activity requires a license or permit before the activity

can be undertaken. Many states, in addition to Pennsylvania, require that an owner of a motor vehicle demonstrate financial responsibility as a condition of having the vehicle registered by the state. Financial responsibility laws may take different forms. They may require one of the following: (1) that the licensee be qualified as a self-insurer; (2) that the licensee purchase an insurance policy with specified limits; or (3) that the licensee post a bond or other security. *See* GEORGE E. REJDA, PRINCIPLES OF RISK MANAGEMENT AND INSURANCE 195 (6th ed.1998).

**22.** It provides:

**"Financial responsibility."** *The ability to respond in damages for liability on account of accidents* arising out of the maintenance or use of a motor vehicle *in the amount of $15,000 because of injury* to one person in any one accident, in the amount of $30,000 because of injury to two or more in any one accident and in the amount of *$5,000 because of damage to property* of others in any one accident. The financial responsibility shall be in a form acceptable to the Department of Transportation.

to the department that all motor vehicles registered in a person's name are covered by motor vehicle liability insurance or by a program of self-insurance as provided by section 1787 (relating to self-insurance) or other reliable financial arrangements, deposits, resources or commitments acceptable to the department.

75 Pa.C.S. § 1782(a). SEPTA chooses to demonstrate its financial responsibility by a "program of self-insurance." Accordingly, SEPTA gave the Department of Transportation evidence of SEPTA's financial arrangements, which may include "deposits, resources, or commitments." 75 Pa. C.S. § 1787(a).[23]

In sum, SEPTA satisfied its obligations as a registrant of motor vehicles. It did not agree to accept the liability of other unrelated persons, which is at the heart of doing business of insurance. To the contrary, it satisfied its own liability for bodily injury caused by one of its vehicles. Motor vehicle financial responsibility is "the ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle." 75 Pa.C.S. § 1702.

We hold, therefore, that SEPTA's response to a claim for damages by Appellants did not implicate 42 Pa.C.S. § 8371.

Being financially responsible for ones own acts has nothing to do with the business of insurance.

## BREACH OF CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING

■ The trial court also held that SEPTA could be held liable to Appellees for mishandling their claims under the theory of good faith and fair dealing. SEPTA contends that it was error for the trial court to apply a doctrine applicable only to contractual relationships[24] because there was no contract between SEPTA and Appellees. We agree with SEPTA's analysis.

■ The RESTATEMENT (SECOND) OF CONTRACTS 205 (1981) provides that [e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. Courts have defined the duty of good faith as [h]onesty in fact in the conduct or transaction concerned, adopting the definition set forth in Section 1201 of the Uniform Commercial Code, 13 Pa.C.S. 1201. *Creeger Brick Building Supply Inc. v. Mid–State Bank Trust Co.*, 385 Pa.Super. 30, 560 A.2d 151, 153 (1989). The good faith obligation may be an express or implied term of a con-

75 Pa.C.S. § 1702 (emphasis added).

**23.** It states:

Self-insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, resources or commitments exist such as will satisfy the department that the self-insurer will:

* * *

(3) Provide uninsured motorist coverage up to the limits set forth in Section 1774.

75 Pa.C.S. § 1787(a)(3).

**24.** In its Pa. R.A.P.1925 opinion, the trial court held that whether there was privity of

contract between SEPTA and Appellees was a question for the jury. It went on to reason that privity of contract can be established under an implied contract theory where needed to avoid unjust enrichment.

There are several flaws in the trial court's holding. First, there was no contract. SEPTA's liability to Appellees arose under the Uninsured Motorists provisions of the MVFRL. Therefore, there can be no privity of contract; SEPTA is the sole party to a self-insurance arrangement. Second, there was no unjust enrichment. Appellees did not pay anything to SEPTA: neither premium nor car fare. In any case, Appellees did not plead that they conferred a benefit upon SEPTA,

tract. *Agrecycle, Inc. v. City of Pittsburgh*, 783 A.2d 863 (Pa.Cmwlth.2001).

 However, the duty of good faith may not be implied where (1) a plaintiff has an independent cause of action to vindicate the same rights with respect to which the plaintiff invokes the duty of good faith; (2) such implied duty would result in defeating a party's express contractual rights specifically covered in the written contract by imposing obligations that the party contracted to avoid; or (3) there is no confidential or fiduciary relationship between the parties. *Agrecycle, Inc.*, 783 A.2d at 867.

First, Appellees cannot establish a contractual relationship with SEPTA. SEPTA's obligations to Appellees arose from the MVFRL, and this statutory scheme does not create a contractual relationship between SEPTA and the Appellees.[25] *Finkbiner v. Medical Professional Liability Catastrophe Loss Fund*, 119 Pa.Cmwlth. 243, 546 A.2d 1327, 1329 (1988).[26] Further, in the absence of a written contract, Appellees must establish an implied duty to act fairly and in good faith on the claims of its injured passengers. However, Appellants cannot satisfy the prerequisites for an implied duty because there is no confidential or fiduciary relationship between Appellees and SEPTA.

In the absence of a contractual relationship between SEPTA and Appellees, there is no basis for asserting the breach of good faith and fair dealing doctrine. The doctrine has no application where, as here, we consider whether SEPTA has met its financial responsibility obligations under the MVFRL.[27]

## CONCLUSION

For these reasons, the decision of the trial court is reversed. We hold that SEPTA's handling of Appellees' claims was governed neither by 42 Pa.C.S. § 8371 nor a duty, express or implied, of good faith and fair dealing.[28] SEPTA's Motion for Judgment on the Pleadings is granted.

## *ORDER*

AND NOW, this 12th day of November, 2003, the order of December 20, 2002, entered by the Court of Common Pleas of Philadelphia County in the above-captioned matter is hereby reversed.

which is the predicate to a claim of unjust enrichment.

25. Further, the complaint does not contain averments of a contract implied in fact or a contract in law, which sets forth the intent of the parties upon which a breach of good faith may be measured. *Highland Sewer and Water Authority v. Forest Hills Municipal Authority*, 797 A.2d 385, 390–391 (Pa.Cmwlth.2002)(contract implied in fact is established from the intent of the parties in light of the surrounding circumstances; contract in law inferred when one party receives an unjust enrichment at the expense of another.)

26. We note that *Finkbiner* has been called into question in *Milton S. Hershey Medical Center v. Medical Professional Liability Catas-*

*trophe Loss Fund*, 763 A.2d 945 (Pa.Cmwlth. 2000). The facts in that case, however, are distinguishable from those before the Court.

27. SEPTA interposed a defense to Appellees' claims that was not frivolous, *i.e.*, whether the unauthorized use of SEPTA's vehicle relieved SEPTA having to pay claims pursuant to the MVFRL. Once it lost that issue, assuming as true the facts as pled, its conduct was dilatory, which is not herein condoned. Nevertheless, it is for the General Assembly to remedy the situation, assuming that the court-imposed sanctions of costs, interest and attorney fees are inadequate to deter such conduct.

28. Because of our resolution of this issue, we need not address SEPTA's remaining argument on whether Appellees' claims are barred under Pa. R.C.P. 1020.